C00073-V21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN ZAHAREAS, | ) | Case No.: |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| KWAME RAOUL, Illinois Attorney | ) | |
| General, in his official capacity, | ) | |
| BRENDAN F. KELLY, in his official | ) | |
| capacity as the Director of the Illinois State | ) | |
| Police; JEFFREY YENCHKO, in his | ) | |
| official capacity as Bureau Chief of the | ) | |
| Illinois State Police Firearms Bureau, | ) | |
| ELIZABETH LEAHY, in her official ca- | ) | |
| pacity as Illinois State Police Firearm | ) | |
| Safety Office Counsel and JOSE G. | ) | |
| CENTENO, | ) | |
|     Defendants | ) | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. 1983
## AND FOR EQUITABLE RELIEF

NOW COMES the Plaintiff, STEVEN ZAHAREAS, by and through his attorney, CHARLES

WM. DOBRA, LTD., and makes the following complaint for the violation of Plaintiff's civil rights to

Due Process and Equal Protection under the law secured by the United States Constitution and by

Federal Law and as guaranteed by the Second, Fourth and Fifth Amendments to the Constitution of the

United States of America, and as applied to the states, including Illinois, through the Fourteenth

Amendment to the Constitution of the United States of America, all to deprive Plaintiff of his civil

rights and property in violation of 42 U.S.C. 1983, and pursuant to 28 U.S.C. 1367 for those state

constitutional provisions and statutes as alleged herein.

### PARTIES TO THIS LITIGATION

    **1.** Plaintiff, STEVEN ZAHAREAS is a natural person and a citizen of the state of Illinois

and the United States, who resides in Schaumburg, Illinois. ZAHAREAS, prior to the events alleged in this instant complaint, lawfully possessed a valid Illinois Firearm Owners Identification card ("FOID"). The "FOID" or "FOID Card" is evidence of a license granted by the state of Illinois to individuals, ZAHAREAS included, that allow the bearer the right to buy and possess firearms and ammunition; once issued, it cannot be terminated without due process of law.[1] ZAHAREAS wishes to exercise his constitutionally protected right under both the federal and state constitutions to keep and bear arms without being subjected to possible criminal prosecution and further harassment by Illinois officials acting through its state police department, and to have his FOID returned to him. Additionally, Plaintiff is a military re-enactor. Without a valid FOID Card, Plaintiff's participation in military re-enactments is severely impacted since without a FOID card he cannot legally carry a firearm.

2. Defendant KWAME RAOUL ("RAOUL"), is the elected Illinois Attorney General. He is the Chief legal officer of the state of Illinois. He is sued in his official capacity. As the Illinois Attorney General RAOUL has a direct responsibility for enforcing and administering the laws, policies, and customs of the state of Illinois as applicable to this cause of action, including, but not limited to the Illinois FOID Card Act, 430 ILCS 65/1 et. seq.

3. Defendant BRENDAN KELLY ("KELLY") is the Director of the Illinois State Police. The ISP is an Illinois Department within the Executive Branch of state government, and is created by statute: See: 20 ILCS 2605/2601-1. As Director, KELLY is directly responsible for executing, enforcing, and administering the laws of the state of Illinois, and its customs, practices, and policies, and as applicable to this instant litigation the FOID card act, 430 ILCS 65/1 et. seq. He is sued in his official capacity. KELLY is the

---

[1] A certificate or document which gives permission. Blacks Law Dictionary, 4th Ed.

state agent responsible for the system extant in Illinois which provides a citizen a means to challenge an erroneous revocation of constitutional rights, albeit an illusory one.

4. Defendant JEFFREY YENCHKO ("YENCHKO") is the Bureau Chief of the Illinois State Police Firearms Bureau. As such, he is responsible for executing, enforcing, and administering the laws of the state of Illinois, and its customs, practices and policies, especially issues concerning firearms and the regulation thereof. He is sued in his official capacity.

5. ELIZABETH LEAHY ("LEAHY") is an individual employed by the Illinois State Police in its Office of Firearms Safety ("OFS") and is, on information and belief, its Firearms Safety Office Counsel. As such, she is an individual who develops protocols and procedures for evaluating the risk of individuals whose FOID card and Concealed Carry Licenses ("CCL") have been denied or revoked under the color of Illinois law. She also oversees and evaluates all appeals of FOID and CCLs, making determinations as to whether the restoration of the right to possess or carry a firearm in Illinois meets legal standards, as she understands them. Since the OFS has the individual power to make such decisions, the OFS is an administrative agency as defined by 735 ILCS 5/3-1-1. She, together with Defendant KELLY, and the other named state defendants, have utterly failed to provide an effective mechanism to challenge an erroneous revocation of and individual's constitutional right to possess, or carry concealed, a firearm, or both, which right is protected by both the federal and state constitutions.[2] She is sued in her official capacity.

6. Defendant JOSE G. CENTENO ("CENTENO") is an individual employed by the Village of Schaumburg, Illinois as a Police Officer. He is sued individually.

7. At all times relevant as alleged in this instant complaint at law, these Defendants were

---

[2]All state defendants are sued pursuant to the principles set forth in *Ex Parte Young, 209 U.S. 123 (1908).*

and are now acting under color of law.

8. Additionally, each defendant did and will in the future, enforce the unconstitutional provisions of state statute under color of that state law, within the meaning of 42 U.S.C. Sec. 1983, unless restrained by the Order of this instant Court.

## NATURE OF THE CASE-STATEMENT OF FACTS-GENERAL ALLEGATIONS

9. On June 21, 2021, Plaintiff had made plans to visit a friend who lived in Huntley, Illinois to purchase a piece of hobby equipment. At some point during Plaintiff's journey from his home, a certain vehicle owned and operated by one SOTIRIOS TZANETOPOULOS was being operated behind Plaintiff's vehicle.

10. At some point, the two vehicles entered the entrance to Westbound Interstate 90 to Rockford at about the same time as both were approaching the toll booth.

11. The vehicle operated by TZANETOPOULOS sped past the vehicle operated by Plaintiff, got in front of Plaintiff's vehicle, and jammed on the brakes. Plaintiff took evasive action to avoid a vehicular collision.

12. As the vehicles proceeded in a northerly direction, on Westbound I-90 to Rockford, the vehicle operated by TZANETOPOULOS engaged in violent maneuvers in an attempt to run Plaintiff's vehicle head first into the concrete middle divider at least three (3) times.

13. Given the foregoing, Plaintiff called "911" for police assistance; he was first connected to a dispatcher employed by NWCD, and thereafter to the Illinois State Police dispatcher. Plaintiff provided the Illinois State Police with the color, make, model, and license plate number for the Chevrolet Suburban vehicle, and a description of the driver of that vehicle as well.

14. Eventually, Plaintiff reported to the Illinois State Police dispatcher that the TZANETOPOULOS vehicle was exiting at Illinois Route 59, and the Illinois State Police dispatcher advised Plaintiff that since they had no units in the vicinity, that they

4

were "passing" Plaintiff's call to the Hoffman Estates, Illinois Police Department.

15. Plaintiff continued his trip to his friend's home in Huntley, and thereafter, that evening, returned to his residence in Schaumburg. Illinois.

16. Despite having a description of the offender and the offender's license plate number, the Illinois State Police, nor, for that matter, *any* police agency, made any effort to arrest the offender.

17. *Two days later*, during the afternoon of June 23, 2021, TZANETOPOULOS, then a resident of Carpentersville, Illinois, appeared uninvited at the residence of Plaintiff.

18. At that time, Plaintiff was working in and around his home, and upon observing through his front picture window the TZANETOPOULOS vehicle pull up in front of his residence, the Plaintiff called out to his wife and directed her to call the police, as the person who tried to kill him two days prior, was now at their residence.

19. Plaintiff walked out the front door of his residence, and stood in his front yard.

20. TZANETOPOULOS, while sitting in his vehicle at the residence of Plaintiff, told the Plaintiff that: "I knew that I could find you...."

21. After making the aforesaid statement, TZANETOPOULOS continued by telling Plaintiff that he was going to "...fix you" and "I'm going to kill you, and then kill your wife and family".

22. That while Plaintiff was standing in his front yard, and with the TZANETOPOULOS vehicle at the curb pointed in the opposite direction of normal traffic, TZANETOPOULOS then and there made an aggressive move and/or movements while inside of his vehicle that appeared to Plaintiff that TZANETOPOULOS was drawing a firearm; given the statements made by TZANETOPOULOS, Plaintiff had no doubt that this individual was intent on carrying out his death threat, and that this action constituted an imminent danger to himself and to his family.[3]

23. At all times described and alleged herein, Plaintiff possessed a valid Illinois FOID card.[4] Plaintiff was carrying a concealed firearm under the waist band of his work shorts; Plaintiff produced his legally owned and carried firearm, pointed it at TZANETOPOULOS, and advised TZANETOPOULOS that the police were on their way, saying, "Don't move, the police are on their way". Defendant CENTENO was not present at this time, and did not witness this event.

24. Upon being so advised, TZANETOPOULOS immediately departed the area at a high speed in his truck; but before doing so, TZANETOPOULOS advised Plaintiff that he was going, but was coming back again, and this time would bring his firearm with him. Because the TZANETOPOULOS truck was parked opposite of the flow of traffic, and because Plaintiff resides on a cul-de-sac, TZANETOPOULOS had to again drive past Plaintiff and again recited his threats, this time through the open passenger side window of his truck.

25. After TZANETOPOULOS left the area, Plaintiff had an opportunity to speak to the police dispatcher, who advised Plaintiff to go inside his house, and put his firearm inside of his home. Plaintiff complied with that request.

26. Subsequently, some minutes later, the Schaumburg police arrived at the residence of the Plaintiff. The police officer having the most interaction with Plaintiff was one JOSE G. CENTENO.

27. After speaking with CENTENO, it became apparent that Officer CENTENO was more focused or fixated on where Plaintiff was standing on his property when Plaintiff terminated the TZANETOPOULOS death threat without discharging his firearm, rather than the death threat itself made to Plaintiff and his family by TZANETOPOULOS.

---

[3] Given the words spoken and the demeanor of this individual, this was a reasonable conclusion.
[4] There is a significance to this as the Illinois State Police "vet" holders of FOID cards every day with the exception of significant holidays.

**28.** It was most obvious to Plaintiff that by CENTENO's words and actions, that CENTENO was not an individual that respected a citizen's Second Amendment rights regarding firearms and the legal use thereof, and the right to self-defense.[5]

**29.** Words were exchanged between Plaintiff and CENTENO. CENTENO appeared incensed that Plaintiff would have the temerity to disagree with him, and acted in a manner that indicated that he was not pleased that Plaintiff disagreed with him.

**30.** Because of CENTENO's repeated accusations, by telling Plaintiff that he was standing in the public way when Plaintiff drew his firearm in defense of himself and his family when he was not, and also because that CENTENO relied on the statement made by TZANETOPOULOS to other Schaumburg officers that Plaintiff threatened him, Plaintiff told CENTENO that if he relied on the ludicrous story told by TZANETOPOULOS to the other Schaumburg officers, that CENTENO was "a fucking imbecile", or words to that effect.

**31.** Despite this exchange of words with Officer CENTENO, Plaintiff did nothing to demonstrate to CENTENO that he unlawfully physically or verbally threatened any person or was a danger to himself; nor did Plaintiff engage in any physical or verbal behavior which would suggest that Plaintiff was violent, suicidal, or that he would illegally assault anyone.

**32.** Thereafter, CENTENO arrested Plaintiff, took Plaintiff into custody, charged and processed him for the offense of Aggravated Assault against TZANETOPOULOS.

**33.** Other police officers employed by Schaumburg who found TZANETOPOULOS a few blocks from the residence of Plaintiff, arrested him, and charged that individual with the

---

[5] It would appear that the right to self-defense pre-dates Christ. Marcus Tullius Cicero stated that "If our lives are endangered…any and every method of protecting ourselves is morally right." More recently, St. George Tucker observed that the right to self-defense is "the true palladium of liberty" and "the right to self-defense is the first law of nature" Blackstone's Commentaries 1: App.300 (1803).

offense of Disorderly Conduct.

34. Plaintiff and TZANETOPOULOS were assigned the same court date in the Circuit Court of Cook County, Illinois, Third Municipal District, located in Rolling Meadows, Illinois. Plaintiff was assisted by legal counsel, as was TZANETOPOULOS. When the Plaintiff's case was called, the state prosecutor asked whether Plaintiff had a valid FOID, and when that valid document was presented, the prosecutor dismissed the charges against Plaintiff.

35. Seemingly, after Plaintiff left the courtroom with his attorney, the charges against TZANETOPOULOS were also dismissed as there was no complaining witness to testify against him.

36. In conjunction with the arrest, CENTENO completed and submitted a certain police report which contained an inaccurate statement or statements, and/or description or descriptions of the events giving rise to the constitutional violations alleged herein; it also contained CENTENO's statement that it was his opinion that Plaintiff was a "clear and present" danger. At best, this report is a contrivance and there is no justification for the same.[6] A copy of that police report is attached hereto as Ex. "A," and made part hereof by incorporation.

37. The *ex parte* police report authored by CENTENO was false, and made in bad faith with the intention to cause harm to Plaintiff. It was made under color of law. It was false in the following regards:

A. "Steven admitted to pointing his firearm while standing on the sidewalk, in a public area". This statement is false and CENTENO knew it was false when he included this statement in his report.

---

[6] A blank copy of the ISP "clear and present danger" report form is attached hereto as Ex.B" and made part hereof by reference.

B. "I spoke to a nearby neighbor [redacted] who witness [sic] Steven point his firearm at Sotirios [redacted] stated he saw the [sic] Steven and Sotirios arguing and then Steven pointed a firearm at Sotirios. [Redacted] advised that Steven had a history of road rage incidents and tends to get upset easily". This is a falsehood by omission as the report elides that when the altercation took place, ZAHAREAS was standing on his front lawn, and not "in the public way".[7]

C. The conclusion made in the police report that Plaintiff was a "clear and present danger" for exercising his right to defend himself and his family was unjustified, had no basis in fact, and was false, and CENTENO knew that this statement, made under color of law, was false when it was made.

D. The separate preparation, and submission to the Illinois State Police of a report that labeled Plaintiff as a "clear and present danger" was without a rational basis, was made in bad faith, and to punish the Plaintiff.

E. The false report authored by CENTENO violated and infringed upon Plaintiff's constitutionally protected Second Amendment rights.

An example of the Illinois State Police "Clear and Present Danger Request" is attached hereto as Ex. "B" and made part hereof by incorporation.

38. On July 28, 2022, approximately *fourteen* (14) months after the incident heretofore described herein, the Illinois State Police, through its office of Firearms Safety, issued a letter directed to Plaintiff relating that it concluded that Plaintiff herein had a mental condition of such a nature that he constituted a clear and present danger to himself, and/or other persons of the community, and that Plaintiff's FOID Card had been revoked. Prior to this revocation, Plaintiff was not provided an adversarial hearing nor any means whatever to respond to or challenge CENTENO's conclusion that Plaintiff

---

[7]Plaintiff does not have a "history" of road rage incidents, and any such statement is a gross speculation.

constituted a "clear and present danger". The terms "Star Chamber" and "Kangaroo Court" come to mind. Plaintiff did not receive a copy of this letter until sometime after August 5th, 2022 though the USPS.[8] Seemingly, the ISP determined that Plaintiff was a clear and present danger pursuant to 430 ILCS 65/8 and 20 Ill. Adm. Code 1230.120(b). A copy of that letter is attached hereto as Ex. "C" and made part hereof by incorporation.[9] A copy of a subsequent revocation letter sent to Plaintiff by the Illinois State Police is attached hereto as Ex. "D" and made part hereof by incorporation.

39. Other than the secret report authored by CENTENO, there is no apparent basis for the deprivation of Plaintiff's constitutionally protected rights without due process of law.[10]

40. Given the extreme passage of time, and without any kind of police interaction at all between the date of the "road rage" incident to the date of receiving the Illinois State Police notification that his FOID was to be suspended or revoked, it would seem that given the passage of time no one could believe that Plaintiff could be considered by anyone to be a "clear and present danger" to anyone, including himself.

41. Subsequent to the issuance of the Illinois State Police letters directed to Plaintiff, and on or about August 5, 2022, one day after the date of the second Illinois State Police revocation letter, and eight days after the date of the first revocation letter, four officers of the Illinois State Police led by one Master Sergeant Ramiro Montes, Star 5225, appeared at the residence of Plaintiff. MONTES asked if Plaintiff was in receipt of the ISP letter which revoked his FOID. Plaintiff related that he was not in receipt of any such letter. Despite the foregoing, MONTES and the three other unknown officers immediately confiscated the FOID Card previously issued by the state of Illinois to

---

[8]See: Paragraph 41, *supra.*
[9]Parenthetically, this statute is unconstitutionally vague, arbitrary and discriminatory.
[10]Plaintiff's counsel requested a copy of this report both from the Schaumburg Police Department, and the Illinois State Police. Neither agency complied with this request.

Plaintiff.

42. The officers employed by the Illinois State Police also demanded that Plaintiff complete and provide to the Illinois State Police a certain "Firearm Disposition Record".

43. Plaintiff, fearing that his legally owned property would be confiscated by the police without benefit of a prior due process hearing to justify the confiscation or seizure of his legal property, as was the case regarding the unjustified and illegal seizure of Plaintiff's FOID Card, Plaintiff returned this document to the Illinois State Police with the notation that Plaintiff had removed all firearms owned by him outside of the jurisdiction of the state of Illinois. See: Ex."E" attached hereto, and incorporated herein by reference.

44. The Illinois State Police subsequently indicated to Plaintiff that such a response was unacceptable.

45. The illegal actions of the Illinois State Police actually deprived Plaintiff of his lawfully held property and his Second Amendment rights without a due process hearing, leaving Plaintiff without a means to protect himself and his family.

46. The investigative report authored by Officer CENTENO, was completed in such a manner that it is largely a lie as it contains false allegations, omissions, and misrepresentations.

47. That because of the actions of Officer CENTENO and the legislative schema extant in the state of Illinois, Plaintiff has been deprived of important civil rights to his detriment, and denied due process and equal protection of the law, and his personal property.

### JURISDICTION AND VENUE

48. This court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. Sec. 1331, 1343(3), 1367, 2201, 2202 and 42 U.S.C. Sec. 1983 since this cause of action arises under the Constitution and the laws of the United States; further this cause of action seeks to redress the deprivation, under color of state law, the rights, privileges or

immunities secured by the constitution United States. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. Sec. 1367, because they are so related to the federal claims that they form part of the same case or controversy under Article III of the federal constitution. This Court is empowered to grant the requested declaratory and injunctive relief pursuant to 28 U.S.C. Sections 2201 and 2202.

49. Venue is proper in this Court pursuant to 28 U.S.C. Sec. 1391(b)(2) as all of the acts or omissions complained of herein occurred in this judicial district.

## LAWS AND LEGAL PRINCIPLES IMPLICATED IN THIS CAUSE OF ACTION

50. **SECOND AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES:**

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

51. **FOURTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES:**

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

52. **FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES:**

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived or life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

**53. FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES:**

> **Sec. 1.** All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law nor deny to any person within its jurisdiction the equal protection of the laws.

**54. 1970 ILLINOIS CONSTITUTION**

**SECTION 1. INHERENT AND INALIENABLE RIGHTS**

All men are by nature free and independent and have certain inherent and inalienable rights among which are life, liberty and the pursuit of happiness. To secure these rights *and the protection of property*, governments are instituted among men, deriving their just powers from the consent of the governed. [Emphasis Added]

**SECTION 2. DUE PROCESS AND EQUAL PROTECTION**

No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws.

**SECTION 6. SEARCHES, SEIZURES, AND INVASIONS**

The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable search, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized.

**SECTION 12. RIGHT TO REMEDY AND JUSTICE**

Each person shall find a certain remedy in the laws for all injuries and wrongs which he received to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly.

**SECTION 22. RIGHT TO ARMS**

> Subject only to the police power, the right of the individual
> citizen to keep and bear arms shall not be infringed.

**55.** 430 Illinois Compiled Statutes 65/1(2)(13)(2):

> "Clear and present danger" means a person who:
> **(1)**  communicates a serious threat of physical violence
> against a reasonably identifiable victim or imposes a clear
> and imminent risk of serious physical injury to himself,
> herself, or another person as determined by a physician,
> psychologist, or qualified examiner; or
> **(2)**  demonstrates threatening physical or verbal
> behavior, such as violent, suicidal, or assaultive threats,
> actions, or other behavior, as determined by a physician,
> clinical psychologist, qualified examiner, school
> administrator, *or law enforcement officer.*  [Emphasis
> Added]

## FIRST CAUSE OF ACTION-MALICIOUS ABUSE OF PROCESS-ACTION AGAINST CENTENO – VIOLATION OF 42 U.S.C. Sec. 1983

**56.** Plaintiff incorporates by reference all of the foregoing paragraphs contained in this instant complaint as if fully set forth herein.

**57.** At all times prior to the allegations set forth in this instant complaint, Plaintiff ZAHAREAS enjoyed clearly established constitutional rights arising under the Second, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution as well as state constitutional rights under Sections 1, 2, 6, 12, and 22 of the constitution of the state of Illinois.

**58.** At all times relevant, JOSE G. CENTENO was employed as a police officer by the Village of Schaumburg, Illinois.

**59.** Concurrent with the arrest of Plaintiff as described herein, CENTENO authored a certain "clear and present danger" report as permitted by 430 Illinois Compiled Statutes 65/1(2)(13)(2). See: Footnote 9, *infra.*

**60.** This report was knowingly, willfully, deliberately and intentionally made in bad faith and with actual malice, and with a reckless disregard for veracity.  It was made to bring

14

harm to Plaintiff, and to unjustly and illegally punish him; thus, the utilization of this report/process was for an improper use. It was made under color of law.

61. In executing a "clear and present danger" report or request, a law enforcement officer is required to *certify* that an individual poses a clear and present danger in that threatening physical or verbal behavior was demonstrated or that the individual was otherwise violent, suicidal or made assaultive threats, actions or exhibited "other behaviors". See: 430 ILCS 65/1.1(2)(13)(2).

62. In Illinois, "certification" occurs pursuant to 735 ILCS 5/1-109. It has the same force and effect as if the statement was subscribed and sworn to under oath before an authorized person, such as a Notary Public.

63. That because of the foregoing allegations, CENTENO committed the offenses of perjury, disorderly conduct, and official misconduct. He additionally violated 18 U.S.C. Sec. 1038. That because of his conduct, CENTENO is not entitled to a defense of Qualified Immunity.

64. The submission of this report interfered with, and deprived Plaintiff of, his clearly established fundamental constitutional rights arising both under the federal and state constitutions, to wit: those constitutional rights arising under the Second Amendment to the federal constitution and Section 22 of the Illinois constitution. Plaintiff suffered harm.

65. Said submission further denied Plaintiff rights both under the federal constitution and the Constitution of the state of Illinois, to wit:

*Federal Constitution*:

A. Second Amendment: Plaintiff's Right to Bear Arms was infringed;

B. Fourth Amendment: Plaintiff had a right to be secure in his effects against an unreasonable seizure of his personal property, to wit: his firearms and that a seizure of

the same would not occur without the issuance of a warrant;

C. Fifth Amendment: Plaintiff had a right not to be deprived of property without due process of Law;

D. Fourteenth Amendment: Plaintiff had a right not to be deprived of property by a State without due process of law.

*Constitution of the state of Illinois*:

E. Article I of the Illinois constitution provides Plaintiff of the expectation that the state government would protect his right to property and the enjoyment thereof;

F. Article II of the Illinois constitution provides that no person in Illinois shall be deprived of property without due process and equal protection of the law.

G. Article VI of the Illinois constitution provides that citizens have the right to be secure regarding their possessions against unreasonable seizures unsupported by a warrant.

H. Article 12 of the Illinois constitution provides that a citizen has a right to a remedy in the law that is not illusory, and that remedy be prompt.

I. Article 22 of the Illinois constitution provides that citizens have a right to keep and bear arms; CENTENO's illegal conduct was a significant and substantial factor contributing to Plaintiff's harm.

66. Plaintiff incurred damages as a result of the submission of this report: to wit: a loss of his civil rights and the loss of property.

67. The deprivation of Plaintiff's constitutional rights were pursuant to a policy or custom existing in the state of Illinois which was utilized by CENTENO improperly.

**WHEREFORE**, Plaintiff prays as follows:

A. For an award of Attorney Fees and Costs pursuant to 42 U.S.C. Sec. 1988 and F.R. Civ.P. 54(d).

B. For compensatory damages;

C. And for such other and further relief as the Court may find just and equitable in the premises.

## SECOND CAUSE OF ACTION-FALSE ARREST-ACTION AGAINST CENTENO-VIOLATION OF 42 U.S.C. Section 1983

68. Plaintiff incorporates by reference all of the foregoing paragraphs contained in this instant complaint as if fully set forth herein.

69. The arrest of Plaintiff for the offense of Aggravated Assault was not an "on view" arrest.

70. The arrest of Plaintiff for the offense of Aggravated Assault was warrantless.

71. The arrest of Plaintiff for the offense of Aggravated Assault was made without probable cause.

72. The arrest of Plaintiff for the offense of Aggravated Assault was motivated by the insult given to CENTENO by Plaintiff, as described herein. Insulting a police officer is not a crime, and there was no other reason why CENTENO arrested Plaintiff.

73. The aforesaid arrest was made under color of law.

74. That the arrest caused damages to be incurred by Plaintiff.

75. That the actions of CENTENO violated both the Fourth Amendment and 18 U.S.C. Sec. 1038. Because of the foregoing, CENTENO is not qualified to a Qualified Immunity defense.

**WHEREFORE**, Plaintiff prays as follows:

A. For an award of Attorney Fees and Costs pursuant to 42 U.S.C. Sec. 1988 and F.R. Civ.P. 54(d).

B. For compensatory damages;

C. And for such other and further relief as the Court may find just and equitable in the premises.

## THIRD CAUSE OF ACTION – DEPRIVATION OF CIVIL RIGHTS AND PERSONAL

## PROPERTY WITHOUT DUE PROCESS OF LAW—IMPLEMENTATION OF UNCONSTITUTIONAL STATE LAW-STATE DEFENDANTS

76. Plaintiff incorporates by reference all of the foregoing paragraphs contained in this instant complaint as if fully set forth herein.

77. 430 ILCS 65/8(f) provides that a final determination as to whether an individual constitutes a "clear and present danger" shall be made by the Illinois State Police. On information and belief, that determination is and was made by the Office of Firearms Safety supervised by Defendant LEAHY.

78. Thus, the Illinois statutes, 430 ILCS sec. 65/1(2)(13), creates a statutory scheme that allows each named defendant to confiscate, and deprive, a citizen and this plaintiff, without any sort of a due process hearing, contrary to the established concepts of due process and equal protection of the law, and certain other constitutional guarantees under both the federal and state constitutions, including but not limited to the revocation of a previously granted license, and the unconstitutional taking of the constitutional rights and property of the citizens of the state of Illinois, and this Plaintiff, upon the mere whim of any law enforcement officer, contrary to this Plaintiff's constitutional rights.

79. The duty of a sworn law enforcement officer is not only to enforce the law, but to protect the civil rights of citizens. Each state defendant has breached that duty for the reasons cited herein.

80. At no time prior to the event alleged in this instant complaint, no medical practitioner rendered an opinion that Plaintiff was a physical threat to himself or to others, nor did he display suicidal ideations.

81. To complicate matters further, the process that a citizen must partake in to appeal any denial of a FOID revocation, is the creation, pursuant to Public Act 102-237, effective

January 1, 2023 of the Illinois Firearms Owners Identification Card Review Board. On information and belief, At some time in late March, 2023, Illinois finally fleshed out this board with a full compliment of members, but seemingly, has not published rules. See: 430 ILCS 65/10. The possibility of a successful appeal is illusory.

82. The Second Amendment is a right incorporated as against the various states of the United States, Illinois included, pursuant to the Due Process Clause of the Fourteenth Amendment.

83. The Second Amendment's stated right to keep and bear arms is a privilege and immunity of United States citizenship which, pursuant to the aforesaid Fourteenth Amendment, enunciates that states, like Illinois, may not violate. It is a clearly established right.

84. The Illinois Supreme Court in *Shawna Johnson v. The Department of State Police,* 2020 IL 124213 at 9, recognized and held that "the right to keep and bear arms is a basic "civil right"". Federal cases such as *D.C. v. Heller, ("Heller")* 554 U.S. 570 (2008), *McDonald v. City of Chicago,* 561 U.S. 742 (2010) (*"McDonald")* and *New York State Rifle & Pistol Association, Inc. v. Bruen , 597 U.S. \_\_\_, (2022)* 2022 WL 2251305, 142 S. Ct. 2111 (U.S., June, 2022) (*"Bruen"*) have also recognized this basic, clearly established right.

85. In order to obtain relief after one is declared a "clear and present danger" by a police officer and confirmed to be a "clear and present danger" by the Illinois State Police, one must comply with the following ISP' procedures:

a. (the applicant must) provide a notarized statement in his own words detailing (i) any and all mental health admissions; (ii) his current mental status and condition; (iii) his mental health history, including any prior treatment or admission; (iv) whether he has complied with treatment and/or medications; (v) the dates and details of all actual or alleged acts of suicide or violence.

b. (the applicant must) provide the name and address of any agency and the date of any legal action and the county and state where any records

are held with respect to any actual or alleged acts of suicide or violence in which law enforcement or the courts were involved.

c. (the applicant must) provide the name and location of any medical provider with respect to any actual or alleged acts of suicide or violence in which any medical care was provided.

d. (the applicant must) provide information to support his suitability for the restoration of his firearm rights including evidence that he will not be likely to act in a manner dangerous to public safety and that granting relief would not be contrary to the public interest.[11]

e. (the applicant must) provide all psychiatric and counseling records related to mental heal diagnosis or treatment provided to him during the previous five years.

f. (the applicant must) submit to and provide a forensic psychiatric evaluation on a specific form, performed by an Illinois licensed psychiatrist or clinical psychologist.[12]

g. (the applicant must) provide certified copies of any court records that address his mental status or allegations he was threatening to harm himself or others; engaged in violence; or abuse alcohol or drugs.

h. (the applicant must) provide at least two notarized letters from adults who are aware of the circumstances regarding the revocation his FOID Card that state the adult's (i) full names, dates of birth, and relationships of Plaintiff, (ii) knowledge of the circumstances regarding the revocation of Plaintiff FOID Card; (iii) opinions of Plaintiff's current mental health condition and risk of his dangerousness to himself or other; and (iv) opinion as to whether Plaintiff's possession of a firearm would be contrary to the public interest.

See: IL Adm Code Title 20, Section 1230.70(b)(3)(A). See: Group Ex.

"F" attached hereto, and made part hereof by incorporation.

86. From a perusal of the foregoing, two things should be evident: first, even if one could consider the "clear and present danger" provisions of the statute as some sort of ersatz "red flag" law, the statute and procedure is constitutionally flawed in not providing that a hearing take place within a date certain. Second, the appeal rights of an applicant are

---

[11]See, Subparagraph f, *supra*.

[12]Note that one can't consult with just any "clinical psychologist"; that individual must possess a Mental Health Certification for Firearm Possession Evaluation [IL-FOID]. Upon information and belief, there are few of these psychologists available to the public statewide. See: Group Ex. "E" attached hereto, and made part hereof by incorporation.

illusory given the hoops that such applicant has to jump through in the amount of time provided by the rules and regulations of the state in force at the time of the facts alleged in this complaint, but seemingly not in force at the time of the filing of this complaint.

87. By implementing its statutory scheme by declaring citizens, including the Plaintiff herein, a "clear and present danger", the state of Illinois maintains and actively deprives individual citizens, via an institutionalized system, including but not limited to ZAHAREAS, of his, her, and their right to keep and bear arms, all in violation of the Second, Fourth and Fourteenth Amendment. ZAHAREAS is further aggrieved by the fact that his legally owned firearms are now useless for the defense of himself, his family, and his home. ZAHAREAS is further aggrieved in that the revocation of his Illinois FOID card has resulted in the suspension of Plaintiff's state of Utah concealed carry permit. See: Ex. "G" attached hereto and made part hereof by incorporation.

88. Further to the foregoing, the statutory scheme created by the state of Illinois and enforced by law enforcement, violates the Fourth and Fifth Amendment rights of ZAHAREAS and other citizens.[13] The seizure of Plaintiff's FOID card constituted an unreasonable seizure without warrant prohibited by the Fourth Amendment, and a deprivation of property in violation of the Fifth Amendment.

89. Still further to the foregoing allegations, by declaring ZAHAREAS a "clear and present danger" more than fourteen (14) months after his interaction with TZANETOPOULOS, and by actively maintaining and actively enforcing laws, customs, practices, and policies under color of state law which deprives individuals of their civil rights as well as their property without the benefit of any kind of hearing whatsoever, violates the Second, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff

---

[13]Upon information and belief, the Illinois State Police have issued approximately 3,600 "clear and present danger" letters to lawful holders of FOID and CCL licensees, and have revoked their respective FOIDs and CCLs.

has thus suffered damages all in violation of 42 U.S.C. Sec. 1983. Plaintiff is therefore entitled to declaratory and permanent injunctive relief against the continued enforcement of the aforementioned state statute, and the maintenance of defendants' unconstitutional customs, policies, and practices.

90. Additionally, by being declared a "clear and present danger" pursuant to 430 IICS 65/8.1(d), and on information and belief, the Illinois State Police have reported Plaintiff to the Illinois Department of Human Services, which, in turn, that agency would report this event to "NICS". The result of such reporting would create a mental health record which would prevent Plaintiff from obtaining a firearm, or obtain a concealed carry permit anywhere in the United States. This allegation is buttressed by the language contained in the state of Utah's suspension letter, Ex. "G".

91. Prior to being tardily declared a "clear and present danger" ZAHAREAS was never provided notice or hearing prior to being deprived of his civil rights and property, all in violation of federal law, specifically: the Second, Fourth, and Fifth Amendment, as applied to Illinois through the Fourteenth Amendment.

92. The actions, laws, customs, and policies of the state of Illinois thus impact the fundamental rights of the Plaintiff herein, all to his detriment and damage. There is an actual and present controversy between the parties.

**WHEREFORE**, Plaintiff prays that this Court enter a judgment:

A. For a declaration pursuant to 28 U.S.C. Sec. 2201 that the Illinois statute is unconstitutional pursuant to federal law.

B. For a finding that the Defendants, facially or as applied to this Plaintiff, have unjustifiably denied ZAHAREAS his Second Amendment right to keep and bear arms for purposes of self-defense through the use of the statute(s), rules, customs and

procedures described herein;

C. For a finding that the Defendants, facially and/or as applied to Plaintiff ZAHAREAS have unjustifiably denied said Plaintiff his Fourteenth Amendment procedural due process rights through the use is the statute(s), rules, customs and procedures described herein;

D. Temporarily and permanently enjoining the state of Illinois and its employees and agents and servants from enforcing the cited Illinois statute, and thus depriving Plaintiff of the further deprivation of his rights to keep and bear arms and the right to procedural due process through the use of the statute(s), rules, customs and procedures described herein, and the lack of any mandated adversarial hearing or other meaningful procedure whereby this Plaintiff can effectively challenge the deprivation of his constitutionally protected firearms rights.

E. Enter a mandatory injunction requiring the named state Defendants to issue Plaintiff a FOID Card within a short day to be set by the Court, and relieve this Plaintiff any and all disabilities the Defendants may have imposed upon him, including but not limited to a recession of the report made through the Illinois Department of Human Services, and remove his name and identifying information from the "NICS" registry.

F. Enter a mandatory injunction which would require Defendants to implement a meaningful procedure in which Plaintiff could participate to challenge his designation as a "clear and present danger" and the resulting in the revocation of his FOID Card;

G. For such other and further relief as the Court may find to be just and proper in the premises, including, but not limited to, the return of Plaintiff's FOID card and Concealed Carry License.

## FOURTH CAUSE OF ACTION-DEPRIVATION OF CIVIL RIGHTS AND PROPERTY - CONTRAVENTION OF ILLINOIS LAW

93. Plaintiff incorporates by reference all of the foregoing paragraphs contained in this instant complaint as if fully set forth herein.

94. The actions of the state of Plaintiff incorporates by reference all of the foregoing paragraphs contained in this instant complaint as if fully set forth herein, Illinois acting through its law enforcement officers thus deprived and continues to deprive Plaintiff of his rights under Sec. 1, 2, 6, 12, and 22 of the Illinois Constitution (Bill of Rights).

**WHEREFORE**, Plaintiff prays that this Court enter a Judgment:

A. For a declaration that the Illinois statute is unconstitutional pursuant to state law.

B. For a declaration pursuant to 28 U.S.C. Sec. 2201 that the Illinois statute is unconstitutional pursuant to federal law.

C. Temporarily and permanently enjoining the state of Illinois and its employees and agents and servants from enforcing the cited Illinois statute, and thus depriving Plaintiff of the further deprivation of his rights to keep and bear arms and the right to procedural due process through the use of the statute(s), rules, customs and procedures described herein, and the lack of any mandated adversarial hearing or other meaningful procedure whereby this Plaintiff can effectively challenge the deprivation of his constitutionally protected firearms rights.

D. Enter a mandatory injunction requiring the named state Defendants to issue Plaintiff a FOID Card within a short day to be set by the Court, and relieve this Plaintiff any and all disabilities the Defendants may have imposed upon him, including but not limited to a recession of the report made through the Illinois Department of Human Services.

E. Enter a mandatory injunction which would require Defendants to implement a meaningful procedure in which Plaintiff could participate to challenge his designation as a "clear and present danger" and the resulting revocation of his FOID Card;

F. For such other and further relief as the Court may find to be just and proper in the

premises, including, but not limited to, the return of Plaintiff's FOID card and

Concealed Carry License.

## FIFTH CAUSE OF ACTION- VIOLATION OF CONSTITUTIONAL RIGHT TO BEAR ARMS – US CONSTITUTION 2nd & 14th AMENDMENTS

**95.** Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

**96.** The determination which found that Defendant constituted a "clear and present" danger, and the statutory scheme made and enforced by the named defendant government agents, and the illusory mechanism for an "appeal" both facially and as applied to this Plaintiff, under the facts presented in this instant case. violates Plaintiff's right to keep and bear arms for self-defense, and other purposes, under the Second Amendment as applied to the state of Illinois through the Fourteenth Amendment of the United States Constitution.

**97.** The implementation of the legislative scheme described and alleged in this instant complaint, unjustifiably denies this Plaintiff (and other law abiding citizens) of his (their) constitutionally protected rights by imposing on Plaintiff a ban on his ability to legally possess firearms and also to utilize firearms in his everyday life and in his avocation as a WWII re-enactor.

**98.** Given case law extant, the deprivation of Plaintiff's ability to lawfully keep and bear arms by the state of Illinois is inconsistent with this Nation's historical tradition relative to firearms regulation. See, generally: *NYSRP v. Bruen, 597 U.S. ____, (2022)* 2022 WL 2251305, 142 S.Ct. 2111 (U.S., June, 2022).

**99.** This deprivation of a citizen's constitutional right to keep and bear arms, based upon a false allegation made by a police officer without permitting a meaningful and effective procedure for a citizen to challenge such baseless allegation, is thus inconsistent with the

law and historic tradition of this Nation.

100. Indeed, and further to the foregoing allegations, the refusal to permit a direct challenge by a citizen "identified" as a "clear and present danger" in the first instance, and only providing a vague, complicated, and illusory mechanism for a citizen to regain his gun rights violates Plaintiff's and a citizen's Second Amendment rights to keep and bear arms, for whatever purpose.

101. Plaintiff has suffered injuries as a result of the action of the named government actors who deprived him of his fundamental right to armed self-defense and the loss of his lawfully possessed property. Prior to the events alleged in this instant complaint, Plaintiff has never engaged in any action that would prohibit him from possessing a firearm. Further, Plaintiff has not engaged in any act subsequent to the events alleged in this instant complaint that would prevent him from exercising his fundamental and constitutional rights.

102. Defendants, at all relevant times, were acting under the color of law, both facially and as applied, and have deprived this Plaintiff of his right to bear arms, all in violation of the Second and Fourteenth Amendment to the Constitution of the United States, and the constitution of the state of Illinois. Plaintiff was and is damaged in violation of 42 U.S.C. Section 1983. Therefore, Plaintiff is now entitled to declaratory and preliminary and permanent injunctive relief for the continued violation of his constitutional rights.

**WHEREFORE,** Plaintiff prays as follows:

A. For a declaration pursuant to 28 U.S.C. Sec. 2201 that the Illinois statute is unconstitutional pursuant to federal law.

B. For a finding that the Defendants, facially or as applied to this Plaintiff, have unjustifiably denied ZAHAREAS his Second Amendment right to keep and bear arms for purposes of self-defense through the use of the statute(s), rules, customs and

procedures described herein;

C. For a finding that the Defendants, facially and/or as applied to Plaintiff ZAHAREAS have unjustifiably denied said Plaintiff his Fourteenth Amendment procedural due process rights through the use is the statute(s), rules, customs and procedures described herein;

D. Temporarily and permanently enjoining the state of Illinois and its employees and agents and servants from enforcing the cited Illinois statute, and thus depriving Plaintiff of the further deprivation of his rights to keep and bear arms and the right to procedural due process through the use of the statute(s), rules, customs and procedures described herein, and the lack of any mandated adversarial hearing or other meaningful procedure whereby this Plaintiff can effectively challenge the deprivation of his constitutionally protected firearms rights.

E. Enter a mandatory injunction requiring the named state Defendants to issue Plaintiff a FOID Card within a short day to be set by the Court, and relieve this Plaintiff any and all disabilities the Defendants may have imposed upon him, including but not limited to a recession of the report made through the Illinois Department of Human Services.

F. Enter a mandatory injunction which would require the state Defendants to implement a meaningful procedure in which Plaintiff could participate to challenge his designation as a "clear and present danger" and the resulting revocation of his FOID Card;

G. For such other and further relief as the Court may find to be just and proper in the premises, including, but not limited to, the return and reinstatement of Plaintiff's FOID card.

Respectfully submitted,

STEVEN ZAHAREAS

BY:    CHARLES WM. DOBRA, LTD.

**27**

By:     _/s/  **Charles Wm. Dobra**_
        His Attorney


Charles Wm. Dobra, Esq.
CHARLES WM. DOBRA, LTD.
Attorney at Law
675 East Irving Park Road, Suite 103
Roselle, Illinois 60172
Tel. (630)893-2494
Fax. (630)893-2497
Email: CWDobra@DobraLaw.Comcastbiz.net
ARDC: #0647039/Kane County
Du Page County: 29320
Cook County: 26755
Winnebago: 8219

**Facsimile Service in Compliance with
Federal Rules will be accepted at:
(630)893-2497**