IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN ZAHAREAS,<br>    Plaintiff<br><br>v.<br><br>KWAME RAOUL, Illinois Attorney General, in his official capacity, BRENDAN F. KELLY, in his official Capacity as the Director of the Illinois State Police; JEFFREY YENCHKO, in his Official capacity as Bureau Chief of the Illinois State Police Firearms Bureau, ELIZABETH LEAHY, in her official capacity as Illinois State Police Firearm Safety Office Counsel and JOSE G. CENTENO,<br>    Defendants | Case No.: 1:23-CV-003423<br><br>Honorable Martha M. Pacold<br><br>Magistrate: H. McShain |

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS RAOUL, KELLY, YENCHKO, AND LEAHY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff, Steven Zahareas ("Zahareas"), by and through his attorney, CHARLES WM. DOBRA, LTD., moves to dismiss Defendants Raoul, Kelly, Yenchko, and Leahy's motion to dismiss Plaintiff's complaint, stating the following:



1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITY ................................................................................................. ii

INTRODUCTION ..............................................................................................................2

MOTION TO DISMISS STANDARDS .............................................................................2

FACTUAL ALLEGATIONS ..............................................................................................3

ARGUMENT .......................................................................................................................5

   I.   THIS COURT HAS JURISDICTION AND STATE DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED ...............................................................................5

      A.   Plaintiff's Claims are Ripe because while exhaustion of Administrative Remedies is not necessary for bringing forth violations of §1983, the Plaintiff's appeal was denied violating his due process rights ........................................................................................5

      B.   Plaintiff's Claims are not a request for Writ of Mandamus and should remain in Federal Court ...............................................................................................................7

   II.   PLAINTIFF HAS SATISFIED BOTH FACIAL AND AS-APPLIED CLAIMS ..............7

      A.   Plaintiff has standing to Challenge the Firearm Owners Identification Card Act on its face 7

      B.   Plaintiff's As-Applied Claims Should be Reviewed Under the Second Amendment as well as the Fourteenth Amendment's Due Process Clause .......................................9

      C.   Plaintiff's As-Applied Claims Should be Reviewed Under the Fourth and Fifth Amendment .................................................................................................................11

      D.   Plaintiff has satisfied to state a procedural due process claim .......................13

   III.   Plaintiff's request for injunctive relief is not barred by the Eleventh Amendment ...........14

CONCLUSION ..................................................................................................................15

# TABLE OF AUTHORITY

Cases

*Ashcroft v. Iqbal,* 129 S.Ct.1937 (2009) .................................................................................. 2

*Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (2007) ............................................................... 2

*Bielanski v. Cty. of Kane,* 550 F.3d 632 (7th Cir. 2008) ........................................................ 11

*cf.Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ........... 3

*City of Los Angeles v. David,* 538 U.S. 715 (2003) .................................................................. 8

*Colon v. Schneider,* 899 F.2d 660 (7th Cir. 1990) ................................................................. 13

*Coniston Corp. v. Village of Hoffman Estates,* 844 F.2d 461 (7th Cir. 1988) ........................... 7

*Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell,* 770 F.3d 586 (7th Cir.2014) ................ 3

*Cuevas v. Hernandez,* No. 19 CV 8347 (N.D. Ill. Mar. 26, 2021) .......................................... 12

*Daniels v. Area Plan Com'n of Allen County,* 306 F.3d 445 (7th Cir.2002) ............................ 6

*District of Columbia v. Heller,* 554 U.S. 570 (2008) ............................................................. 10

*Freiburger v. Emery Air Charter, Inc.,* 795 F.Supp. 253 (N.D.Ill.1992) ................................... 2

*Hinrichs v. Whitburn,* 975 F.2d 1329 (7th Cir.1992) ............................................................... 5

*Horsley v. Trame,* 61 F. Supp. 3d 788 (S.D. Ill. 2014) ............................................................ 6

*Huckins v. McSweeney,* 166 N.H. 176 (N.H. 2014) ................................................................. 8

*Khorrami v. Rolince,* 539 F.3d 782 (7th Cir. 2008) ................................................................. 2

*Kroll v. Bd. of Trustees of Univ. of Illinois,* 934 F.2d 904 (7th Cir. 1991) ............................. 14

*Mathews v. Eldridge,* 424 U.S. 319 (1976) ......................................................................... 8, 13

*McDonald v. City of Chicago,* 130 S. Ct. 3020 (2010) .......................................................... 10

*McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) ................ 5

*Moore v. Madigan,* 702 F.3d 933 (7th Cir. 2012) ................................................................. 10

*Neita v. City of Chi.*, 830 F.3d 494 (7th Cir. 2016) ........................................................................11

*Niemeyer v. Williams*, No. 07-cv-1103 (C.D. Ill. Mar. 31, 2008) ....................................................8

*Patsy v. Florida Bd. Of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)................6

*Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984) .....................................15

*Rhein v. Pryor*, 13 C 843 (N.D. Ill. Mar. 20, 2014).........................................................................11

Rowe v. DeBruyn, 17 F.3d 1047 (7th Cir. 1994) .............................................................................13

United States v. Emerson, 270 F.3d 20 (5th Cir. 2001)...................................................................10

*Unity Ventures v. Lake Cnty.*, 841 F.2d 770 (7th Cir.1988) .............................................................5

*Virginia Duncan et al v. Rob Bonita, in his capacity as Attorney General of the State of*

   *California*, Case Number 17-cv-1017-BEN (JLB).....................................................................10

*Washington v. Haupert*, 481 F.3d 543 (7th Cir. 2007) ...................................................................12

## Statutes

28 U.S.C. § 1331...............................................................................................................................7

28 U.S.C. § 1367(a) ..........................................................................................................................7

## Other Authorities

Firearm Owners Identification Card Act ..........................................................................................8

## INTRODUCTION

Plaintiff seeks justice for his Second, Fourth, Fifth, and Fourteenth Amendment constitutional rights being violated as a result of Officer Centeno arresting him without probable cause. Plaintiff's constitutional rights were violated again by the State Defendants, revoked his FOID card and seized his firearms without probable cause and due process. Plaintiff requests the Court deny State Defendant's motion to dismiss as Plaintiff has satisfied all claims alleged in his complaint.

## MOTION TO DISMISS STANDARDS

When ruling on a motion to dismiss for failure to state a claim, the court accepts all well-pleaded allegations to be true and all reasonable inferences in the Plaintiff's favor. *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996). A complaint must include "enough facts to state a claim to relief that is plausible on its face." *Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir. 2008), *quoting Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 547 (2007). While detailed factual allegations are not required... the plaintiff must allege facts that, when "accepted as true, state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct.1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

A motion based on standing pursuant to Federal Rule of Civil Procedure 12(b)(1) is subject to the same pleading standard. *Freiburger v. Emery Air Charter, Inc.*, 795 F.Supp. 253, 256–57 (N.D.Ill.1992). However, Plaintiff "bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586,

2

588–89 (7th Cir.2014); *cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (holding that the Plaintiff has the burden of establishing the requirements of standing).

## **FACTUAL ALLEGATIONS**

According to Zahareas's Verified Complaint, the Plaintiff has made the following well-pleaded allegations against State Defendants and regarding the incident in general, which at this stage this Court should accept as true:

1. On June 23, 2021, Sotirios Tzanetopoulos ("Tzanetopoulos") appeared uninvited at the residence of the Plaintiff. (Compl., ¶17)

2. Plaintiff possessed a valid FOID card and produced his legally owned and carried firearm, pointed it at Tzanetopoulos and advised him that the police were on their way. (*Id.*, ¶23)

3. When Officer Centeno arrived on the scene, Plaintiff informed him:

    a. Of the incident on June 21, 2021, and now the same car that tried to run him off the road two days prior was now parked in front of his home. (Complt. Ex. A)

    b. Plaintiff felt threatened by Tzanetopoulous, not only by his statements, but by him showing up at his residence. (*Id.*)

4. Per Officer Centeno's own Incident/Offense Report, Tzanetopoulos's story was not consistent. In the incident report, Officer Centeno stated that Tzanetopoulos said "while he was drive north on Salem, he stated he noticed the same vehicle from the road rage incident (blue pickup truck) parked outside. However, later in the report, Officer Centeno made the note that "the only way to see [Plaintiff's] pickup truck was to drive down Parker Dr. since it is not visible from Salem Dr."

3

5. Plaintiff did nothing to demonstrate to Officer Centeno that he unlawfully physically or verbally threatened any person or was a danger to himself; nor did Plaintiff engage in any physical or verbal behavior which would suggest that Plaintiff was violent, suicidal, or that he would illegally assault anyone. (*Id.*, ¶31)

6. Office Centeno arrested Plaintiff, took Plaintiff into custody, charged, and processed him for the offense of Aggravated Assault against Tzanetopoulos. (*Id.*, ¶32)

7. The arrest of Plaintiff for the offense of Aggravated Assault was motivated by the insult given to Officer Centeno by Plaintiff. Insulting a police officer is not a crime, and there was no other reason why Officer Centeno arrested Plaintiff. (*Id.*, ¶72)

8. When the Plaintiff's case was called, the state prosecutor asked whether the Plaintiff had a valid FOID, and when that valid document was presented, the prosecutor dismissed the charges against the Plaintiff. (*Id.*, ¶34)

9. In conjunction with the arrest, Officer Centeno completed and submitted a police report which contained an inaccurate statement or statements, and/or description or descriptions of the events giving rise to the constitutional violations alleged. This police report also contained Officer Centeno's statement that it was his opinion that Plaintiff was a "clear and present" danger without any justification for this. (*Id.*, ¶36)

10. In executing a "clear and present danger" report or request, a law enforcement office is required to *certify* that an individual poses a clear and present danger in that threatening physical or verbal behavior was demonstrated or that the individual was otherwise violent, suicidal or made assaultive threats, actions or exhibited "other behaviors." See: 430 ILCS 65/1.1(2)(13)(2) (*Id.*, ¶61)

4

11. In Illinois, "certification" occurs pursuant to 735 ILCS 5/1-109. It has the same force and effect as if the statement was subscribed and sworn to under oath before an authorized person, such as a Notary Public. (*Id.*, ¶62)

12. On July 28, 2022, approximately fourteen months after the incident, the Illinois State Police, through its office of Firearms Safety, issued a letter directed to Plaintiff concluding that Plaintiff had a mental condition and that he constituted a clear and present danger to himself and/or other persons of the communication, and that Plaintiff's FOID Card had been revoked. (*Id.*, ¶38)

## ARGUMENT

### I. THIS COURT HAS JURISDICTION AND STATE DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED

#### A. Plaintiff's Claims are Ripe because while exhaustion of Administrative Remedies is not necessary for bringing forth violations of §1983, the Plaintiff's appeal was denied violating his due process rights

Cases are not ripe where the allegations are "hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir.1992). *See Unity Ventures v. Lake Cnty.*, 841 F.2d 770, 775 (7th Cir.1988) (holding that a constitutional challenge to a municipal decision was "not ripe for adjudication" without a final decision from a governmental entity).

The general rule concerning exhaustion is "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (*quoting Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938)). Where a statutory requirement of exhaustion is not explicit, however, "courts are guided by congressional intent in determining whether applications of the doctrine would be

5

consistent with the statutory scheme." *Patsy v. Florida Bd. Of Regents,* 457 U.S. 496, 502 n. 4, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). In *Patsy,* the Supreme Court held that "[b]ased on the legislative histories of both §1983 and §1997e ... exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to §1983." *Id.* at 516, 102 S.Ct. 2557. Likewise, the general rule in the Seventh Circuit is that federal civil rights suits do not require exhaustion. *See Daniels v. Area Plan Com'n of Allen County,* 306 F.3d 445, 453 (7th Cir.2002).

State Defendants argue that Plaintiff did not obtain a final decision from the Board and falsely allege that he did not even initiate the appeal process, the Court does not have the necessary facts to determine if Plaintiff's FOID card was revoked without adequate process. However, initiating or completing the appeals process is not a prerequisite for bringing forth a §1983 claim.

In <u>Horsley</u>, Ms. Horsley was 18 years old and sought to purchase a double barrel shotgun for use in home protection. She was unable to obtain written consent from her parent or guardian and applied for a FOID Card, but her application was returned to her as "incomplete." Ms. Horsley alleged that the return of her application is a constructive denial of the application. The FOID Card Act provides for appeal of denials to the Direct of State Police for a hearing under 430 ILSC § 65/10, but she did not appeal. Horsley Defendant argued that Ms. Hosley's failure to appeal the denial of her FOID application renders her complaint unripe, or non-justiciable. Even in this situation where an appeal was never even attempted, the Court held that Ms. Hosley was "not required to exercise her administrative appeal opportunity under the FOID Card Act, and this case is ripe for review." *Horsley v. Trame,* 61 F. Supp. 3d 788, 791 (S.D. Ill. 2014)

Unlike Ms. Horsley, in this case, the Plaintiff did appeal to the FOID Card Review Board **(see Exhibit A)** however, the Illinois State Police responded that the Plaintiff was out of time to

6

respond for administrative relief **(see Exhibit B)**. This was a final decision. Thus, while not a requisite, Plaintiff did exhaust his administrative remedy. Plaintiff's complaint is ripe and State Defendant's motion to dismiss should be denied.

B. <u>Plaintiff's Claims are not a request for Writ of Mandamus and should remain in Federal Court</u>

The Federal court has subject matter jurisdiction over the Plaintiff's §1983 claims because they are based on federal law. <u>See</u> 28 <u>U.S.C.</u> § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Further, this Court has supplemental jurisdiction over Plaintiff's state-law claims because those claims and Plaintiff's §1983 claims "form part of the same case or controversy." 28 <u>U.S.C.</u> § 1367(a). *Pittman v. City of Mount Sterling*, No. 16-cv-03314, at *4 (C.D. Ill. Jan. 2, 2018) Federal Courts have "no jurisdiction to issue a mandamus against state officials for violating their duties under state law." *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 469 (7th Cir. 1988)

Plaintiff is not asking the Federal Court to direct the State Court to align with their duties under state law because it is the state law that is unconstitutional on its face and as-applied to the Plaintiff in this case. Given the fact that the state law is unconstitutional and Plaintiff has no ability to appeal, jurisdiction is appropriate in Federal Court.

## II. <u>PLAINTIFF HAS SATISFIED BOTH FACIAL AND AS-APPLIED CLAIMS</u>

A. <u>Plaintiff has standing to Challenge the Firearm Owners Identification Card Act on its face</u>

Plaintiff has alleged that this statute on its face violates the following laws and legal principles: Second, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States as well as sections 1, 2, 6, 12, and 22 of the 1970 Illinois Constitution. (Compl., ¶50-54)

7

A facial challenge is a head-on attack on a legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications. To prevail on a facial challenge to a statute, the challenger must establish that no set of circumstances exists under which the Act would be valid. *Huckins v. McSweeney*, 166 N.H. 176, 179 (N.H. 2014).

The Due process clause requires an opportunity to be heard in a meaningful time and manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); See also *City of Los Angeles v. David*, 538 U.S. 715, 716-717 (2003). *Niemeyer v. Williams*, No. 07-cv-1103, at *25 (C.D. Ill. Mar. 31, 2008). Section 10 of the Firearm Owners Identification Card Act violates due process and several other constitutional rights as it does not provide an individual with the opportunity to be heard *prior* the seizure of their FOID card and their firearms being seized violating their constitutional rights being violated.

> Sec. 10. Appeals; hearing; relief from firearm prohibitions.
> (a) Whenever an application for a Firearm Owner's Identification Card is denied or whenever such a Card is revoked or seized as provided for in Section 8 of this Act, the aggrieved party may (1) file a record challenge with the Director regarding the record upon which the decision to deny or revoke the Firearm Owner's Identification Card was based under subsection (a-5); or (2) appeal to the Director of the Illinois State Police through December 31, 2022, or beginning January 1, 2023, the Firearm Owner's Identification Card Review Board for a hearing seeking relief from such denial or revocation

The Firearm Owners Identification Card Act creates a statutory scheme that allows the State Defendants to confiscate, and deprive, a citizen and this Plaintiff, without any sort of a due process hearing, contrary to the established concepts of due process and equal protection of the law, and certain other constitutional guarantees under both the federal and state constitutions, including but not limited to the revocation of a previously granted license, and the unconstitutional taking of the constitutional rights and property of the citizens of the state of Illinois, and this

8

Plaintiff, upon the mere whim of any law enforcement officer, contrary to this Plaintiff's constitutional rights. (Compl., ¶78).

State Defendants are mistaken that it is not just the Clear and Present Danger provision that is "unconstitutional in all of its applications," but rather in **all scenarios under this statute** – mentally ill or not, convicted felon or not – not only does a person not have the opportunity for a hearing or appeal, they are not even informed that they are being investigated or allowed to be a part of that investigation. The first correspondence that they receive from Illinois State Police is a letter informing them that their "FOID card has been revoked" and "within **48 hours**[1] of receiving this notification" they need to (1) surrender their FOID card to the local law enforcement agency; (2) transfer all firearms in their possession; and (3) complete a Firearm Disposition Record. Nowhere in this correspondence does the Illinois State Police inform individuals of their rights to a hearing or an appeal. (Compl. Exs. C and D).

Given the circumstances, Plaintiff has standing to challenge the Firearm Owners Identification Card Act on its face.

B. <u>Plaintiff's As-Applied Claims Should be Reviewed Under the Second Amendment as well as the Fourteenth Amendment's Due Process Clause</u>

State Defendant attempts to reduce the unconstitutional violations experience by alleging that Plaintiff claims should fall under the due process clause of the Fourteenth amendment – not the Second Amendment. However, this fails as Plaintiff is able to satisfy at the pleading stage a violation of his Second Amendment right to bear arms.

Plaintiff allege that the revocation of his FOID card and the confiscation of his firearms violate his Second Amendment, which provides an individual right to firearms ownership. See

---

[1] 48 hours is not sufficient time to request and hold a hearing before being forced to have their property seized.

9

*McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010); *District of Columbia v. Heller*, 554 U.S. 570 (2008)

The Second Amendment to the United States Constitution "guarantee[s] the individual right to possess and carry weapons in case of confrontation." "This guarantee is fully binding the States and limits their ability to devise solutions to social problems." *Virginia Duncan et al v. Rob Bonita, in his capacity as Attorney General of the State of California*, Case Number 17-cv-1017-BEN (JLB), USDC SDCA, Decision of Hon. Roger T. Benitez, US District Judge, in a Decision dated September 22, 2023, *quoting McDonald v. City of Chicago*, Illinois 561 US 742, 785, (2010). As Judge Benitz observed, this is a centuries old proposition, quoting 2 Tucker's Blackstone 143: "This may be considered a true palladium of liberty. .. The right of self-defense is the first law of nature: in most governments it has been the study of rulers to confine the right within the narrowest limits possible."

If Plaintiff had suffered a mental condition or showed that he was a clear and present danger to either himself or others, then he likely would have suffered no Second Amendment deprivation. See *Heller*, 554 U.S. at 626 (observing that "the right secured by the Second Amendment is not unlimited," and noting that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons or the mentally ill"); *Moore v. Madigan*, 702 F.3d 933, 940-41 (7th Cir. 2012) (same); United States v. Emerson, 270 F.3d 203, 261 (5th Cir. 2001) ("it is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms").

However, Plaintiff alleges that he did nothing to demonstrate to Officer Centeno that he unlawfully physically or verbally threatened any person or was a danger to himself; nor did Plaintiff engage in any physical or verbal behavior which would suggest that Plaintiff was violent,

10

suicidal, or that he would illegally assault anyone. (Compl., ¶31) Plaintiff further alleges that at no time prior to the events on June 21, 2021, no medical practitioner rendered an opinion that Plaintiff was a physical threat to himself or to others, nor did he display suicidal ideations. (*Id.* at ¶80).

Similarly, in Rhein, Mr. Rhein alleged that the revocation his FOID card was a violation of his Second Amendment right because in his Complaint he alleged that he had no mental condition and the Defendant could not reasonably have thought that he had have such a condition. The Northern District of Illinois Eastern Division held that "[b]ecause those allegations are deemed true at the pleading stage, the individual capacity Second Amendment claim survives dismissal." *Rhein v. Pryor*, 13 C 843, at *10 (N.D. Ill. Mar. 20, 2014). Thus, Plaintiff's as-applied claim can be reviewed under the Second Amendment.

### C. Plaintiff's As-Applied Claims Should be Reviewed Under the Fourth and Fifth Amendment

The seizure of Plaintiff's FOID card and his firearms constituted an unreasonable seizure without warrant which is prohibited by the Fourth Amendment and being deprived of property (his FOID card and firearms) without due process is in violation of his Fifth Amendment right.

To state a Fourth Amendment claim, Plaintiff must allege that he was arrested or seized without probable cause. See *Neita v. City of Chi.*, 830 F.3d 494, 497 (7th Cir. 2016); *Bielanski v. Cty. of Kane*, 550 F.3d 632, 637 (7th Cir. 2008).

State Defendant attempts to bar Plaintiff from making a Fourth Amendment claim because it alleges that the reason for this claim is centered around due process. While due process is one of the constitutional rights that have been violated, unfortunately, it is not the only one. The first domino in what would be many constitutional violations that would lead to Plaintiff's FOID card revoked and firearms seized was when Officer Centeno made numerous false statements that led to an arrest and a false clear and present danger report being made without probable cause.

11

Defendants (specifically Officer Centeno) intentionally made false statements to support their probable cause narrative, and such allegations sufficiently state a Fourth Amendment claim. E.g., *Washington v. Haupert*, 481 F.3d 543, 551 (7th Cir. 2007) (fabricating a police report to justify an arrest violates the Fourth Amendment)" *Cuevas v. Hernandez*, No. 19 CV 8347, at *9 (N.D. Ill. Mar. 26, 2021).

Plaintiff has made the following allegations in his complaint that support false statements were made that support the Defendant's probable cause narrative:

- Per Officer Centeno's own Incident/Offense Report, Tzanetopoulos's story was not consistent.

- Plaintiff did nothing to demonstrate to Officer Centeno that he unlawfully physically or verbally threatened any person or was a danger to himself; nor did Plaintiff engage in any physical or verbal behavior which would suggest that Plaintiff was violent, suicidal, or that he would illegally assault anyone. (Compl., ¶31)

- "Steven admitted to pointing his firearm while standing on the sidewalk, in a public area". This statement is false and CENTENO knew it was false when he included this statement in his report. (Compl., ¶37A)

- "I spoke to a nearby neighbor [redacted] who witness [sic] Steven point his firearm at Sotirios [redacted] stated he saw the [sic] Steven and Sotirios arguing and then Steven pointed a firearm at Sotirios. [Redacted] advised that Steven had a history of road rage incidents and tends to get upset easily". This is a falsehood by omission as the report elides that when the altercation took place, ZAHAREAS was standing on his front lawn, and not "in the public way". (Compl., ¶37B)

- The conclusion made in the police report that Plaintiff was a "clear and present danger" for exercising his right to defend himself and his family was unjustified, had no basis in fact, and was false, and CENTENO knew that this statement. made under color of law, was false when it was made. (Compl., ¶37C)

- The separate preparation, and submission to the Illinois State Police of a report that labeled Plaintiff as a "clear and present danger" was without a rational basis, was made in bad faith, and to punish the Plaintiff. (Compl., ¶37D)

- The false report authored by CENTENO violated and infringed upon Plaintiff's constitutionally protected Second Amendment rights. (Compl., ¶37E)

12

With regards to the Defendants Fifth Argument claim, they cite *United States v. $7,999 in U.S. Currency,* a case from the 8th circuit and not binding to the Court. While the holding in that case is not as clear as the Defendants summarized, Plaintiff can say that the police acting without probable cause falls outside of any state's police power.

D. <u>Plaintiff has satisfied to state a procedural due process claim</u>

The due process clause of the Fourteenth Amendment is the source of three separate constitutional protections that may serve as the basis of a section 1983 claim against the state and its agents and employees. *Colon v. Schneider*, 899 F.2d 660, 666 (7th Cir. 1990). Rowe v. DeBruyn, 17 F.3d 1047, 1050 (7th Cir. 1994).

> First, the Clause incorporates specific protections defined in the Bill of Rights. . . . Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." *Daniels v. Williams,* 474 U.S. 327, [337-38, 106 S.Ct. 662, 677-78, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring)]. As to these two types of claims, the constitutional violation actionable under § 1983 is complete when the wrongful action is taken. . . . The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. A § 1983 action may be brought for a violation of procedural due process, but . . . [i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.* . . . [ *Id.*] The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.

*Colon,* 899 F.2d at 666 (citing *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)).

The well-known procedural due process requirements are notice and an opportunity to be heard. Mathews v. Eldridge, 42 U.S. 319, 333 (1976). State Defendant first focuses their argument as to when the deprivation occurred – from the time when Plaintiff was arrested for aggravated battery and when his FOID card was revoked. However, this is not when the State failed to provide Plaintiff with due process.

13

The State fails to provide procedural due process the <u>first</u> time by failing to provide Plaintiff with notice that an investigation was being conducted that may revoke his Second Amendment constitutional right to own a firearm. The State failed the <u>second</u> time when revoking Plaintiff's FOID card without any type of notice or opportunity for Plaintiff to provide evidence to the contrary. The State failed a <u>third</u> and <u>fourth</u> time when their July 28, 2022 and August 4, 2022 letters informing Plaintiff that his FOID card had been revoked and he needed to surrender his firearms failed to include any instruction for how Plaintiff could appeal this decision. The State failed a <u>fifth</u> and final time when failing to allow the Plaintiff to appeal its decision.

### III.     <u>Plaintiff's request for injunctive relief is not barred by the Eleventh Amendment</u>

The language of the Eleventh Amendment seems simple enough: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[B]ut eleventh amendment jurisprudence has not precisely followed the text of the amendment." *Kroll v. Bd. of Trustees of Univ. of Illinois*, 934 F.2d 904, 906 (7th Cir. 1991). The Supreme Court has broadened the amendment's language in some respects and narrowed it in others. "Suits against state officials are sometimes permissible, and the key inquiry is whether the state is the real, substantial party in interest." Id. at 907. (internal quotation omitted). "Personal-capacity suits raise no eleventh amendment issues even though an official might have the requisite nexus to the state in order for his or her actions to be labelled state action." *Id.* "**Official-capacity suits, in contrast, are deemed to be against the entity** of which an officer is an agent." *Id.* "**Under an exception to the general rule, however, official-capacity actions may not be barred by the eleventh amendment insofar as they request prospective**

14

**relief—i.e., an injunction** or a declaratory judgment and monetary damages that are 'ancillary' to either." *Id.* at 908. (emphasis added).

There is no merit in Defendants' argument that Plaintiff's request for an injunction is an attempt to enforce state law in federal court that violates the Eleventh Amendment under *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984). It is well established that plaintiffs may obtain a federal court injunction against state official to prevent violations of federal constitutional rights, based on the supremacy of the U.S. Constitution. See *Pennhurst*, 465 U.S. at 104-05 (*citing Ex Parte Young*, 209 U.S. at 160). In *Pennhurst*, the Court held that plaintiffs may not obtain relief against state officials on the basis of state law because that would "not vindicate the supreme authority of federal law." *Id.* at 106.

Here, Plaintiff's claims are based on a violation of federal law—the Second Amendment, the Due Process Clause of the Fourteenth Amendment, Fourth Amendment, Fifth Amendment and 42 U.S.C. § 1983. The Defendant's refusal to reinstate Plaintiff's FOID card without due process will continue to be a violation of Plaintiff's constitutional rights and seeking such an injunction is not barred by the Eleventh Amendment.

## CONCLUSION

Respectfully, this Court should not allow the State Defendants to continue to use the Firearm Owners Identification Card Act as a way to violate this Plaintiff's constitutional rights. This leaves this Plaintiff and Plaintiff's family vulnerable and unable to defend themselves against harm. For all the foregoing reasons, Plaintiff requests that this Court deny State Defendants' motion to dismiss in its entirety.

|  |  |
|---|---|
| October 23, 2023 | Respectfully submitted, |

|  |  |
|---|---|
|  | STEVEN ZAHARIAS |
| By: | Charles Wm. Dobra, Ltd. |
| By: | **/s/ Charles Wm. Dobra** |

*Attorney for Plaintiff*
*Steven Zaharias*

**Charles Wm. Dobra, Esq.**
CHARLES WM. DOBRA, LTD.
Attorney at Law
675 East Irving Park Road, Suite 103
Roselle, Illinois 60172
Tel. (630) 893-2494
Fax. (630) 893-2497
Email: cwdobra@dobralaw.comcastbiz.net
ARDC: #0647039/Kane County
Du Page County: 29320
Cook County: 26755
Winnebago: 8219
**Facsimile Service in Compliance with**
**Federal Rules will be accepted at:**
**(630) 893-2497**

## PROOF OF SERVICE

      The undersigned, an attorney, hereby certifies that this document was served by causing a copy to be transmitted by Electronic Mail, to all attorneys of record at their respective electronic mail address as disclosed by the pleadings, and transmitting the same from Roselle, Illinois, before 5:00 p.m., on October 23, 2023.

**/s/ Charles Wm. Dobra**

---

i

16