IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN ZAHAREAS,<br>    Plaintiff | )<br>)<br>)<br>) | Case No.: 1:23-CV-003423<br><br>Honorable Martha M. Pacold |
| v. | )<br>)<br>)<br>) | Magistrate: H. McShain |
| KWAME RAOUL, Illinois Attorney General, in his official capacity, BRENDAN F. KELLY, in his official Capacity as the Director of the Illinois State Police; JEFFREY YENCHKO, in his Official capacity as Bureau Chief of the Illinois State Police Firearms Bureau, ELIZABETH LEAHY, in her official ca-Pacity as Illinois State Police Firearm Safety Office Counsel and JOSE G. CENTENO,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION OF
JOSE G. CENTENO'S RULE 12(B)(6) MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

Plaintiff, Steven Zahareas ("Zahareas"), by and through his attorney, CHARLES WM. DOBRA, LTD., moves to dismiss Jose G. Centeno's Rule 12(B)(6) Motion to Dismiss Counts I and II of Plaintiff's Complaint at Law, stating the following:



PLAINTIFF'S EXHIBIT B

1

# TABLE OF CONTENTS

TABLE OF AUTHORITY ................................................................................................3

INTRODUCTION ............................................................................................................4

MOTION TO DISMISS STANDARDS ..........................................................................4

FACTUAL ALLEGATIONS ...........................................................................................5

ARGUMENT.....................................................................................................................8

    Plaintiff's First Cause of Action (Malicious Abuse of Process) against Defendant Centeno has been satisfied at this pleading stage..............................................................................8

    Plaintiff's Second Cause of Action (False Arrest) against Defendant Centeno has been satisfied at this pleading stage ...........................................................................................10

        A.   Defendant Centeno lacked probable cause when arresting Plaintiff because of the conclusively established evidence pointing to self-defense. ................................................10

        B.   Qualified Immunity and Arguable Probable Cause is not appropriate to resolve at the motion-to-dismiss stage as it is premature and should be denied.........................................13

    The cases that Defendant Centeno incorrectly relies on precedent from the Summary Judgment Stage ................................................................................................................15

CONCLUSION................................................................................................................16

## **TABLE OF AUTHORITY**

Cases

*Ashcroft v. Iqbal*, 129 S.Ct.1937 (2009)...........................................................................................3

*Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (2007)........................................................................3

*Brown v. The City of Chicago*, 594 F. Supp. 3d 1021 (N.D. Ill. 2022)......................................8, 12

*Fleming v. Livingston Cnty., Illinois*, 674 F.3d 874 (7th Cir. 2012) ...............................................12

*Frobe v. Vill. of Lindenhurst*, No. 11 C 1722, 2014 WL 902878 (N.D. Ill. Mar. 7, 2014)............13

*Grafton v. Fobelk*, No. 18-CV-6099, 2020 WL 7398785 (N.D. Ill. Dec. 17, 2020).........................8

*Higgins v. Vill. of Lyons*, 22 C 4563 (N.D. Ill. Mar 10, 2023) ........................................................12

*Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048 (7th Cir. 2004).........................................10

*Holiday Magic, Inc. v. Scott*, 4 Ill. App. 3d 962 (1972) ...................................................................7

*Johnson v. City of E. Peoria*, No. 17-cv-1212-JES-JEH (C.D. Ill. Aug. 28, 2019) .................10, 11

*Jordan v. Bonano*, No. 22 C 725, 2022 WL 13916597 (N.D. Ill. Oct. 24, 2022) ..........................13

*Khorrami v. Rolince*, 539 F.3d 782 (7th Cir. 2008) .........................................................................3

*Kumar v. Bornstein*, 354 Ill. App. 3d 159 (Ill. App. Ct. 2004).........................................................7

*Liqui-Box Corp. v. Scholle IPN Corp.*, 449 F. Supp. 3d 790 (N.D. Ill. 2020) .................................8

*Mitchell v. Archibald & Kendall, Inc.*, 573 F.2d 429 (7th Cir. 1978) ..............................................8

*Neurosurgery Spine Surgery v. Goldman*, 339 Ill. App. 3d 177 (Ill. App. Ct. 2003).......................7

*Reed v. City of Chicago*, 77 F.3d 1049 (7th Cir. 1996).....................................................................3

*Romando v. City of Naperville*, No. 20 C 2701,' 2021 WL 1853304 (N.D. Ill. May 10, 2021)....13

*United States v. Reed*, 443 F.3d 600 (7th Cir. 2006).....................................................................10

Statutes

720 ILCS 5/12-1 (a) ........................................................................................................9

720 ILCS 5/12-2(c) .........................................................................................................9

720 ILCS 5/7-1 ...............................................................................................................9

## INTRODUCTION

The Plaintiff seeks justice for Abuse of Process, a safeguard against the misuse of legal procedures. The Defendant Centeno's actions not only unjustly led to the Plaintiff's arrest but also stripped him of his Second Amendment rights by terminating his Firearms Owner Identification ("FOID") card. While Defendant Centeno claims the complaint lacks specifics, it's essential to understand that, at this early stage, the court's role isn't to delve into the essential facts but to protect Plaintiff from a legal processes gone awry. Plaintiff's Aggravated Assault arrest, later dismissed, was rooted in self-defense, which any reasonable officer could conclude was clearly justified. This arrest was a violation of Plaintiff's Second and Fourth Amendment rights. Plaintiff requests the Court deny Defendant Centeno's motion to dismiss as it is premature.

While the doctrine of qualified immunity may have significance later, this is not the right time to resolve that issue. The focus, at this stage, must be on an objective scrutiny of Defendant Centeno's actions. Denying Defendant Centeno's motion to dismiss is paramount at this early juncture.

## MOTION TO DISMISS STANDARDS

When ruling on a motion to dismiss for failure to state a claim, the court accepts all well-pleaded allegations to be true and all reasonable inferences in the Plaintiff's favor. *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996). A complaint must include "enough facts to state a claim to relief that is plausible on its face." *Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir.

2008), *quoting Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 547 (2007). While detailed factual allegations are not required... the plaintiff must allege facts that, when "accepted as true, state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct.1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

## FACTUAL ALLEGATIONS

According to Zahareas's Verified Complaint, the Plaintiff has made the following well-pleaded allegations against Officer Centeno and regarding the incident in general, which at this stage this Court should accept as true:

1. On June 21, 2021, Plaintiff's vehicle and a vehicle operated by Sotirios Tzanetopoulos's ("Tzanetopoulos") entered the entrance to Westbound Interstate 90 to Rockford at about the same time as both were approaching the toll booth. (Compl., ¶10)

2. The vehicle operated by Tzanetopoulos sped past the Plaintiff, got in front of Plaintiff's vehicle, and jammed on the brakes. Plaintiff took evasive action to avoid a vehicular collision. (*Id.*, ¶11)

3. As the vehicles proceeded in a northerly direction, Tzanetopoulos engaged in violent maneuvers in an attempt to run Plaintiff's vehicle head first into the concrete middle divider at least three (3) times. (*Id.*, ¶12)

4. Officer Centeno was not present during the altercation between Plaintiff and Tzanetopoulo on the afternoon of June 23, 2021. (*Id.*, ¶23)

5. While Plaintiff was standing in his front yard, Tzanetopoulos made an aggressive move and/or movements while inside his vehicle that appeared to Plaintiff that Tzanetopoulos

5

was drawing a firearm; given the statements made by Tzanetopoulos that he was going to "...fix [the Plantiff]" and he was "going to kill [the Plaintiff], and then kill [his] wife and family," Plaintiff had no doubt that Tzanetopoulos was intent on carrying out his death threat. (*Id.*, ¶21-22)

6. Plaintiff possessed a valid FOID card and produced his legally owned and carried firearm, pointed it at Tzanetopoulos and advised him that the police were on their way. (*Id.*, ¶23)

7. When Officer Centeno arrived on the scene, Plaintiff informed him:
    a. Of the incident on June 21, 2021, and now the same car that tried to run him off the road two days prior was now parked in front of his home. (Complt. Ex. A)
    b. Plaintiff felt threatened by Tzanetopoulous, not only by his statements, but by him showing up at his residence. (*Id.*)

8. Officer Centeno was focused or fixated on where Plaintiff was standing on his property when Plaintiff terminated Tzanetopoulos's death threats without discharging his firearm, rather than Tzanetopoulos's death threats made to Plaintiff and his family. (*Id.*, ¶27)

9. Per Officer Centeno's own Incident/Offense Report, Tzanetopoulos's story was not consistent. In the incident report, Officer Centeno stated that Tzanetopoulos said "while he was drive north on Salem, he stated he noticed the same vehicle from the road rage incident (blue pickup truck) parked outside. However, later in the report, Officer Centeno made the note that "the only way to see [Plaintiff's] pickup truck was to drive down Parker Dr. since it is not visible from Salem Dr."

10. Officer Centeno appeared incensed that Plaintiff would have the temerity to disagree with him and acted in a manner that indicated that he was not pleased that Plaintiff disagreed with him. (*Id.*, ¶29)

11. Plaintiff told Officer Centeno that if he relied on the ludicrous story told by Tzanetopoulos to the other officers, that Officer Centeno was "a fucking imbecile," or words to that effect. (*Id.*, ¶30)

12. Plaintiff did nothing to demonstrate to Officer Centeno that he unlawfully physically or verbally threatened any person or was a danger to himself; nor did Plaintiff engage in any physical or verbal behavior which would suggest that Plaintiff was violent, suicidal, or that he would illegally assault anyone. (*Id.*, ¶31)

13. Office Centeno arrested Plaintiff, took Plaintiff into custody, charged, and processed him for the offense of Aggravated Assault against Tzanetopoulos. (*Id.*, ¶32)

14. The arrest of Plaintiff for the offense of Aggravated Assault was not an "on view" arrest. (*Id.*, ¶69)

15. The arrest of Plaintiff for the offense of Aggravated Assault was motivated by the insult given to Officer Centeno by Plaintiff. Insulting a police officer is not a crime, and there was no other reason why Officer Centeno arrested Plaintiff. (*Id.*, ¶72)

16. At the time of the arrest, Plaintiff was clear from all wants/warrants and **released on bond** (after Officer Centeno's allegations that Plaintiff was a clear and present danger). (Compl. Ex. A)

17. When the Plaintiff's case was called, the state prosecutor asked whether the Plaintiff had a valid FOID, and when that valid document was presented, the prosecutor dismissed the charges against the Plaintiff. (*Id.*, ¶34)

18. In conjunction with the arrest, Officer Centeno completed and submitted a police report which contained an inaccurate statement or statements, and/or description or descriptions of the events giving rise to the constitutional violations alleged. This police report also

7

contained Officer Centeno's statement that it was his opinion that Plaintiff was a "clear and present" danger without any justification for this. (*Id.*, ¶36)

  a. Plaintiff never admitted to pointing his firearm while standing on the sidewalk in a public area. Officer Centeno knew this was false when including this statement in his report. (*Id.*, ¶37A.)

19. In executing a "clear and present danger" report or request, a law enforcement office is required to *certify* that an individual poses a clear and present danger in that threatening physical or verbal behavior was demonstrated or that the individual was otherwise violent, suicidal or made assaultive threats, actions or exhibited "other behaviors." See: 430 ILCS 65/1.1(2)(13)(2) (*Id.*, ¶61)

20. In Illinois, "certification" occurs pursuant to 735 ILCS 5/1-109. It has the same force and effect as if the statement was subscribed and sworn to under oath before an authorized person, such as a Notary Public. (*Id.*, ¶62)

21. On July 28, 2022, approximately fourteen months after the incident, the Illinois State Police, through its office of Firearms Safety, issued a letter directed to Plaintiff concluding that Plaintiff had a mental condition and that he constituted a clear and present danger to himself and/or other persons of the communication, and that Plaintiff's FOID Card had been revoked. (*Id.*, ¶38)

## ARGUMENT

### Plaintiff's First Cause of Action (Malicious Abuse of Process) against Defendant Centeno has been satisfied at this pleading stage

Abuse of process is defined as the misuse of legal process to accomplish some purpose outside the scope of the process itself. *Kumar v. Bornstein*, 354 Ill. App. 3d 159, 165 (Ill. App. Ct. 2004) The *only* elements necessary to plead a cause of action for abuse of process are (1) the

8

existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings. *Holiday Magic, Inc. v. Scott*, 4 Ill. App. 3d 962, 966 (1972). In order to satisfy the second element, the plaintiff must show that the process was used to accomplish some result that is beyond the purview of the process. *Neurosurgery Spine Surgery v. Goldman*, 339 Ill. App. 3d 177, 183 (Ill. App. Ct. 2003).

Defendant Centeno's Motion to Dismiss claims that Plaintiff has not satisfied only the second element necessary to plead an abuse of process claim. As such, Plaintiff will only be addressing satisfaction of this element, although it is Plaintiff's position that he satisfied both elements.

Throughout Defendant Centeno's Motion to Dismiss, he cites the case *Kumar*. In this case the trial court dismissed the plaintiff's complaint for abuse of process because he failed to allege an actual arrest or seizure of property, and failed to satisfy the second element of the tort of abuse of process." *Kumar*, 354 Ill. App. 3d 159, 160 (Ill. App. Ct. 2004). The Appellate Court of Illinois, Second District made the point that reviewing relevant case law *generally* views ***an actual arrest or seizure of property as a sufficient fact to state a claim for abuse of process***." (emphasis added) *Id.* at 166.

In the case at hand, Plaintiff has experienced both, he was arrested for Aggravated Assault and as a result his FOID card was revoked. Defendant Centeno used the legal process when he arrested Plaintiff and charged him with Aggravated Assault. After the improper use of this process, Defendant Centeno authored a false Clear and Present Danger request which further violated Plaintiff's constitutionally protected Second Amended rights as it resulted in Plaintiff's FOID card getting revoked.

9

Defendant Centeno argues that "Plaintiff does not allege that Officer Centeno used the form in any improper way after its submission or after IDSP made its determination; he merely alleges that Officer Centeno authored the form and submitted it to IDSP to punish him" See, Defendant Centeno's Memo of Law p. 15. *However, this is a motion to dismiss.* A complaint is "not required to allege all, or any, of the facts logically entailed by the claim," nor does it "fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrong." *Brown v. The City of Chicago*, 594 F. Supp. 3d 1021, 1033-34 (N.D. Ill. 2022) (*quoting Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (citation omitted)). These factual issues, and thus Defendant Centeno's challenges, are more appropriately left for a motion for summary judgment, not a motion to dismiss. See *Grafton v. Fobelk*, No. 18-CV-6099, 2020 WL 7398785, at *4 (N.D. Ill. Dec. 17, 2020) ("A determination as to whether a seizure is reasonable is a fact intensive argument, and therefore the Court finds that it is inappropriate on a motion to dismiss."); see also *Mitchell v. Archibald & Kendall, Inc.*, 573 F.2d 429, 432 (7th Cir. 1978) ("Where the pleadings raise a contested issue of material fact, a Rule 12(b)(6) motion must be denied." ); see also *Liqui-Box Corp. v. Scholle IPN Corp.*, 449 F. Supp. 3d 790, 800 (N.D. Ill. 2020) (the purpose of a motion to dismiss is to test the sufficiency of the complaint, accepting all well-pleaded allegations are true, not to decide the merits or resolve factual disputes).

### **Plaintiff's Second Cause of Action (False Arrest) against Defendant Centeno has been satisfied at this pleading stage**

A. Defendant Centeno lacked probable cause when arresting Plaintiff because of the conclusively established evidence pointing to self-defense.

Plaintiff was arrested on June 23, 2023, for Aggravated Assault-Offense Based on Use of Firearm, Device or Motor Vehicle, 720 ILCS 5/12-2(c). After Plaintiff showed the state prosecutor

10

that he had a valid FOID (a fact that Defendant Centeno knew), the prosecutor dismissed the charges against the Plaintiff.

720 ILCS 5/12-2(c) indicates that "[a] person commits aggravated assault when, in committing an assault, he or she does the following: (1) uses a deadly weapon ... other than by discharging the firearm." Id. And under 720 ILCS 5/12-1 (a) "[a] person commits an assault when, *without lawful authority*, he or she knowingly engages in conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-l(a). (emphasis added)

Here, Plaintiff did have lawful authority to (1) carry his firearm and (2) was justified in self-defense. At the time of the incident, Plaintiff had a valid FOID card and was eligible to possess/acquire firearms and firearm ammunition as a part of the public safety initiative in the State of Illinois. By Plaintiff having a valid FOID card Defendant Centeno knew the following about the Plaintiff because these things must be true to be eligible and remain eligible to hold a valid FOID:

- He has not been convicted of any Felony under the laws of Illinois or any other jurisdiction;
- He has not been adjudicated as a mental defective.
- He has not been a patient in a mental institution or any part of a medical facility for the treatment of mental illness within the past 5 years.
- He has not within the past 5 years been convicted of battery, assault, aggravated assault, violation of an order of protection, or a substantially similar offense in which a firearm was used or possessed.

Plaintiff also was justified under 720 ILCS 5/7-1 to use force because he believed that that such conduct was necessary to prevent imminent death or great bodily harm to himself or his family. Plaintiff was reasonable in thinking this because just two days before Tzanetopoulos (a stranger to Plaintiff) tried to run him off the road and now Tzanetopoulos has taken effort to hunt Plaintiff down, pull up in front of his house (in the opposite direction of traffic), threaten his life and the life of his family, while making aggressive movements inside his vehicle that appeared to Plaintiff that Tzanetopoulos was drawing a firearm. All while Plaintiff was standing on his

11

property. Plaintiff never discharged his weapon and only used the level of force that was necessary to prevent the imminent threat.

Probable cause "is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006). Determining whether probable cause existed "entails a purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant." *Johnson v. City of E. Peoria*, No. 17-cv-1212-JES-JEH, at *13 (C.D. Ill. Aug. 28, 2019) (*quoting Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 714 (7th Cir. 2013)). A police officer may not ignore conclusively established evidence of the existence of an affirmative defense in determining whether there is probable cause, but the officer has no duty to investigate the validity of any defense. *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004).

Given the totality of the circumstances, any officer with common-sense judgment will look at this as a self-defense case, especially because Tzanetopoulos's story lacked credibility:

1. Two days prior, there was a road rage incident between the Plaintiff and Tzanetopoulos;
2. Tzanetopoulos told Defendant Centeno that he was coming from Orland Park and was on his way to get empanadas from La Unica Café, while driving north on Salem, Tzanetopoulos told Defendant Centeno that he noticed the same vehicle from the road rage incident;
3. This route does not make sense. Parker Drive is a residential street and La Unica Café is right off the highway. The common-sense route from Orland Park to La Unica Café traveling on the highway, no residential road;
4. Additionally, Defendant Centeno stated in his incident report that the only way to see Plaintiff's pickup truck was to drive down Parker Drive since it is not visible from Salem Drive. Any officer with comment-sense judgment would see that Tzanetopoulos lacks credibility.
5. An officer with common sense would conclude that Tzanetopoulos was hunting down the Plaintiff;
6. Tzanetopoulos told Defendant Centeno that he went to Plaintiff's house because he wanted an apology.

Whether Defendant Centeno had probable cause to defeat Plaintiff's false arrest claim and violation of his Second and Fourth Amendment rights is a fact-intensive one.

12

In *Johnson*, a case that is cited throughout Defendant Centeno's motion to dismiss, Defendants argue the §1983 false arrest claim and the malicious prosecution claim (Counts 6 and 7) fail because Defendant Catton had probable cause to believe Plaintiff committed aggravated battery. The Defendant in this case was seeking relief under a motion for summary judgment (a motion filed after discovery has concluded) as opposed to a motion to dismiss (looking at just the initial Complaint). The Court held that because the current record (after discovery) did not sufficiently explore the totality of the circumstances related to *mens rea* to determine whether or not summary judgment is warranted, the Court believed it was the wisest course to deny summary judgment to allow for further factual development. This is because "before the court can apply the law, it must have an adequate factual basis for doing so. " *Johnson v. City of E. Peoria*, No. 17-cv-1212-JES-JEH, at *15 (C.D. Ill. Aug. 28, 2019).

Given that the discovery process has not yet started, and crucial records, such as Defendant Centeno's undisclosed report, remain missing, it is clear that there is material factual dispute and the court lacks the necessary evidence to consider granting Defendant Centeno's motion to dismiss at this early pleading stage. The Court is urged to await the completion of the discovery process to ensure a fair and informed decision. Plaintiff will be highly prejudiced if this motion were to be granted. If this motion were to be denied Defendant Centeno would not be prejudiced as he could file a motion for summary judgment after the discovery phase concluded.

B. <u>Qualified Immunity and Arguable Probable Cause is not appropriate to resolve at the motion-to-dismiss stage as it is premature and should be denied.</u>

The doctrine of qualified immunity for police officers provides that a defendant is entitled to qualified immunity in a false-arrest case when, if there is no probable cause, a reasonable officer could have mistakenly believed that probable cause existed. This standard is often dubbed "arguable probable cause." Arguable probable cause is established when a reasonable police

officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law. *Fleming v. Livingston Cnty., Illinois*, 674 F.3d 874 (7th Cir. 2012)

When evaluating whether qualified immunity applies, the court must ask two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right; and, (2) whether that constitutional right was clearly established at the time of the alleged violation. This inquiry is an objective one; it does not consider officials' subjective motivations and gives them the benefit of the doubt. *Brown v. City of Chicago*, 594 F.Supp.3d 1021 (N.D. Ill. 2022).

While dismissal may be appropriate where the plaintiff asserts the violation of a broad constitutional right that had not been articulated at the time the violation is alleged to have occurred, it may not be where the existence of qualified immunity depends on the particular facts of a given case. *Brown v. City of Chicago*, 594 F.Supp.3d 1021 (N.D. Ill. 2022). Qualified immunity is rarely appropriately resolved at the motion-to-dismiss stage, as it may depend on particular facts that a plaintiff need not plead to state a claim. At the motion-to-dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness. *Higgins v. Vill. of Lyons*, 22 C 4563 (N.D. Ill. Mar 10, 2023).

Defendants ultimately may be able to establish that they reasonably believed that they had probable cause to arrest one or both of the Plaintiffs, but their motion on that ground is premature and is denied. See *Jordan v. Bonano*, No. 22 C 725, 2022 WL 13916597, at *4 (N.D. Ill. Oct. 24, 2022) (denying motion to dismiss unlawful seizure claim where Plaintiff "plausibly alleged facts that suggest that the Troopers 'consciously disregarded] information' that would have clarified the situation and negated probable cause") (*quoting* Dean v. City of Chi., 896 F.Supp.2d 699, 704

(N.D. Ill. 2012)); *Romando v. City of Naperville*, No. 20 C 2701,' 2021 WL 1853304, at *3 (N.D. Ill. May 10, 2021) (deeming it "too early to determine the issue" of probable cause, where plaintiff alleged she had not committed the crimes or acts of which she was accused); *Frobe v. Vill. of Lindenhurst*, No. 11 C 1722, 2014 WL 902878, at *4 (N.D. Ill. Mar. 7, 2014) (denying motion to dismiss false arrest claim because, read "in the light most favorable to" the plaintiff, his allegations "adequately denied that he was speeding").

In *Higgins,* the plaintiffs were arrested while they operated a drone to obtain overhead images of an investigation site. The plaintiffs sued the officer for false arrest, among other causes of action. The officer brought a motion to dismiss. The United States District Court for the Northern District of Illinois held that the plaintiffs' factual allegations indicated that neither their physical location nor their act of flying a drone was inherently unlawful. Their actions, without more, did not indicate that officers could reasonably have believed that their conduct was disorderly. The Court held that while the defendants may ultimately be able to establish that they reasonably believed that they had probable cause to arrest one or both of the plaintiffs, their motion to dismiss on that ground was premature.

Therefore, in light of the legal precedents and the specific circumstances of this case, it is evident that dismissing the motion on the grounds of qualified immunity at this early stage would be unjust. Defendant Centeno has the opportunity to establish the reasonableness of his actions later in the legal proceedings, but the current motion to dismiss is not the appropriate time for such a final determination.

### The cases that Defendant Centeno incorrectly relies on precedent from the Summary Judgment Stage

In an attempt to wiggle out of this lawsuit, Defendant Centeno incorrectly relies on precedent from the Summary Judgment stage. See, e.g., Defendant Centeno's Memo of Law p. 15

*Olsen v. Karwoski,* 386 N.E.2d 444 (Ill. App. Ct. 1st Dist. 1979); p. 22 *Johnson v. City of East Peoria,* No. 17-cv-1212-JES-JEH, 2019 WL 4061665, at *7 (C.D. Ill. Aug. 28, 2019). In the context of a Motion to Dismiss under 12(B)(6), this Court should instead look to those decisions that considered the sufficiency of the allegations of abuse of process at this early pleading stage.

## CONCLUSION

Respectfully, this Court should not allow Defendant Centeno to walk away from what he did to Plaintiff here. His actions violated Plaintiff's constitutional rights and caused his FOID card to be revoked. This leaves his family vulnerable and unable to defend themselves against harm that may come to their home. For all the foregoing reasons, Plaintiff requests that this Court deny Defendant Centeno's motion to dismiss and such other and further relief as this Court deems just and proper.

October 23, 2023

Respectfully submitted,

STEVEN ZAHARIAS
By: Charles Wm. Dobra, Ltd.
By: **/s/ Charles Wm. Dobra**

*Attorney for Plaintiff*
*Steven Zaharias*

**Charles Wm. Dobra, Esq.**
CHARLES WM. DOBRA, LTD.
Attorney at Law
675 East Irving Park Road, Suite 103
Roselle, Illinois 60172
Tel. (630) 893-2494
Fax. (630) 893-2497
Email: cwdobra@dobralaw.comcastbiz.net
ARDC: #0647039/Kane County
Du Page County: 29320
Cook County: 26755
Winnebago: 8219
**Facsimile Service in Compliance with
Federal Rules will be accepted at:
(630) 893-2497**

**PROOF OF SERVICE**

    The undersigned, an attorney, hereby certifies that this document was served by causing a copy to be transmitted by Electronic Mail, to all attorneys of record at their respective electronic mail address as disclosed by the pleadings, and transmitting the same from Roselle, Illinois, before 5:00 p.m., on October 23, 2023.

<u>**/s/ Charles Wm. Dobra**</u>