IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN ZAHAREAS,<br>  Plaintiff | )<br>)<br>)<br>) | Case No. 1:23-cv-03423<br><br>Judge: M. Pacold |
| v. | )<br>) | Magistrate Judge Heather K. McShain |
| KWAME RAOUL, Illinois Attorney General, in his official capacity; BRENDAN F. KELLY, in his official capacity as Director of the Illinois State Police; JEFFREY YENCHKO, in is official capacity as Bureau Chief of the Illinois State Police Firearms Bureau, ELIZABETH LEAHY, in her official capacity as Illinois State Police Firearm Safety Officer Counsel, and JOSE G. CENTENO,<br>  Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

**PLAINTIFF'S RESPONSE TO STATE DEFENDANTS'
AMENDED MOTION TO DISMISS**

NOW COMES the Plaintiff, STEVEN ZAHAREAS, by and through his counsel, CHARLES WM. DOBRA, LTD., and for his response to the state defendants' amended motion to dismiss, states as follows:

1

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................................................... 5

RULE 12(b)(1) STANDARD ........................................................................................................ 6

MOOTNESS LEGAL STANDARD ............................................................................................. 6

FACTUAL ALLEGATIONS ......................................................................................................... 8

ARGUMENT ................................................................................................................................ 10

    *I. THE REINSTATEMENT OF PLAINTIFF'S FOID CARD DOES NOT RENDER THE STATE LAW CLAIMS MOOT AS THIS VIOLATION CAN REOCCUR AND HAS NOT BEEN COMPLETELY AND IRREVOCABLY ERADICATED ............................................................ 10*

    *II. PLAINTIFF CONTINUES TO SEEK JUSTICE FOR HIS STATE LAW CLAIMS ............ 15*

CONCLUSION ............................................................................................................................ 17

# TABLE OF AUTHORITY

Cases

*Ashcroft v. Iqbal,* 129 S.Ct.1937 (2009) .................................................................................................5

*Aslin v. Financial Indus. Regulatory Auth., Inc.,*704 F.3d 475 (7th Cir.2013) ................................9

*Bell Atlantic Corp. v. Twombly* 550 U.S. 544 (2007) ......................................................................5

*Bernstein v. Bankert,*733 F.3d 190 (7th Cir.2013) ..........................................................................9

*Berron v Ill. Concealed Carry Licensing Review Bd.*, 825 F3d 843 (7th Cir 2016) .....................12

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.,*

 532 U.S. 598 (2001).................................................................................................................16

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1981) ......................................................6

*County of Los Angeles v. Davis,* 440 U.S. 625 (1978)..........................................................6, 10, 13

*Damasco v. Clearwire Corp.,*662 F.3d 891 (7th Cir.2011) ...............................................................9

*Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,*

 528 U.S. 167 (2000)..................................................................................................................16

*H.P. v Naperville Cmty. Unit Sch. Dist. #203,* 910 F3d 957 (7th Cir 2018)...................................12

*Khorrami v. Rolince,* 539 F.3d 782 (7th Cir. 2008) .........................................................................5

*Md. Cas. Co. v. Pac. Coal & Oil Co.,*312 U.S. 270 (1941)..............................................................6

*Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of Milwaukee,*

 708 F.3d 921 (7th Cir. 2013).............................................................................................5, 6, 14

*Pakovich v. Verizon LTD Plan,*653 F.3d 488 (7th Cir.2011)..........................................................10

*Ragsdale v. Turnock*, 841 F.2d 1358 (7th Cir. 1988) .............................................................6, 10, 13

*Reed v. City of Chicago,* 77 F.3d 1049 (7th Cir. 1996) ....................................................................5

*Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115 (1974)...........................................................6, 14

*Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517 (7th Cir. 2001) ...................... 15

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950) .............................................................. 13

Statutes

42 USC §1983 ............................................................................................................................. 4, 9

430 ILCS 65/1.1(2)(13)(2) ............................................................................................................ 11

430 ILCS 65/8(f) .................................................................................................................... 11, 15

430 ILCS 65/1(2)(13) .............................................................................................................. 15, 16

735 ILCS 5/1-109 ........................................................................................................................ 11

## **INTRODUCTION**

The State Defendants Motion to Dismiss the State law claims must be denied pursuant to Federal Rules of Civil Procedure 12(b)(1) because the unilateral reissuance of Plaintiff's Firearm Owners Identification Card (hereinafter "FOID card") does not moot Plaintiff's state-law claims or violations under 42 USC §1983.

Plaintiff seeks justice for violations of his Second, Fourth, Fifth, and Fourteenth Amendment constitutional rights as a result of Officer Centeno, acting under color of state law, arresting him without probable cause and depriving him of his rights, privileges or immunities secured by the Constitution of the United States. Plaintiff's Constitutional rights were again violated when the State Defendants, acting under color of state law, revoked his FOID card and seized his firearms without probable cause and constitutional due process.

As such, Plaintiff's State law claims are so intertwined with his federal claims that they form part of the same case or controversy under Article III of the federal constitution which is not mooted by the state reinstating Plaintiff's FOID card.

Additionally, on information and belief, the State Defendants declaration that Plaintiff posed a "clear and present danger" pursuant to ILCS 65/8(d) has been reported to NICS. On information and belief, this will result in Plaintiff's inability to purchase a firearm in the future. Thus, reinstating Plaintiff's FOID card does not moot Plaintiff's state-law claims or violations of 42 USC § 1983. Nor does it reinstate Plaintiff's intertwined Utah revocation.

Defendant's motion only addresses Plaintiff, Steven Zahareas's Fourth Cause of Action for Deprivation of Civil Rights and Property contrary to Illinois Law which sought replacement of his FOID Card, amongst other damages. As such, this Court should only address dismissal of Plaintiff's Fourth Cause of action. The Court should order a partial summary judgment in favor of

5

Plaintiff and against Defendants on the issue pursuant to FRCP 56, *sua sponte*.

## RULE 12(b)(1) STANDARD

When ruling on a motion to dismiss for failure to state a claim, the court accepts all well-pleaded allegations to be true and all reasonable inferences in the Plaintiff's favor. *Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir. 1996). A complaint must include "enough facts to state a claim to relief that is plausible on its face." *Khorrami v. Rolince,* 539 F.3d 782, 788 (7th Cir. 2008), *quoting Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 547 (2007). While detailed factual allegations are not required... the plaintiff must allege facts that, when "accepted as true, state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S.Ct.1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949.

When considering the mootness of this case, the Courts must address two separate inquiries. First, the Courts consider general mootness doctrine. Then, the Courts address the exception for parties who continue to seek declaratory relief from an ongoing policy, even after the specific event precipitating the challenge has become moot. *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of Milwaukee,* 708 F.3d 921, 929 (7th Cir. 2013).

## MOOTNESS LEGAL STANDARD

Mootness is "the doctrine of standing set in a time frame"; that is, "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of Milwaukee,* 708 F.3d 921, 929 (7th Cir. 2013) *quoting Friends of the Earth,* 528 U.S. at 189, 120 S.Ct. 693.

6

Thus, the mootness doctrine requires re-evaluating the standing requirements throughout litigation. If at any point the plaintiff would not have standing to bring suit at that time, the case has become moot.

It is well established that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 1074-75, 71 L.Ed.2d 152 (1981). For a defendant's voluntary cessation to render a case moot, (1) there must be no reasonable expectation that the alleged violation will recur, and (2) the effects of the alleged violation must have been completely and irrevocably eradicated. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1978). In a voluntary cessation case, the defendant bears a heavy burden to persuade the court that a controversy is moot. *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988). In this case, it has not.

The Courts recognize that in some cases, like the case at hand, have held that disputes over an ongoing policy may continue, even after the specific offense precipitating the suit has become moot. *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of Milwaukee*, 708 F.3d 921, 930 (7th Cir. 2013) *citing to Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 121–24, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). In those cases, if a litigant challenges the policy through a declaratory judgment, then the case should proceed when "'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Super Tire Eng'g Co.*, 416 U.S. at 122, 94 S.Ct. 1694 (*quoting Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). In addition, the ongoing policy must be a "continuing and brooding presence" that "casts ... a substantial adverse effect on the interests of the petitioning

parties." *Id.*

## FACTUAL ALLEGATIONS

According to Zahareas's Verified Complaint, the Plaintiff has made the following well-pleaded allegations against State Defendants and regarding the incident in general.

1. On June 23, 2021, Sotirios Tzanetopoulos ("Tzanetopoulos") appeared uninvited at the residence of the Plaintiff. (Compl., ¶17)

2. Plaintiff possessed a valid FOID card and produced his legally owned and carried firearm, and in self-defense and in the defense of his family, pointed it at Tzanetopoulos and advised him that the police were on their way. (*Id.*, ¶23)

3. When Officer Centeno arrived on the scene, Plaintiff informed him:
   a. Of the incident on June 21, 2021, and now the same car that tried to run him off the road two days prior was now parked in front of his home. (Complt. Ex. A)
   b. Plaintiff felt threatened by Tzanetopoulous, not only by his statement, that he was going to kill Plaintiff and his family, but also by him showing up at his residence. "I knew I could find you." (*Id.*)

4. Per Officer Centeno's own Incident/Offense Report, Tzanetopoulos's story was not consistent. In the incident report, Officer Centeno stated that Tzanetopoulos said "while he was driving north on Salem, he stated he noticed the same vehicle from the road rage incident (blue pickup truck) parked outside. However, later in the report, Officer Centeno made the note that "the only way to see [Plaintiff's] pickup truck was to drive down Parker Dr. since it is not visible from Salem Dr."

5. Plaintiff did nothing to demonstrate to Officer Centeno that he unlawfully physically or verbally threatened any person or was a danger to himself; nor did Plaintiff engage in any

physical or verbal behavior which would suggest that Plaintiff was violent, suicidal, or that he would illegally assault anyone. (*Id.*, ¶31)

6. Office Centeno arrested Plaintiff, took Plaintiff into custody, charged, and processed him for the offense of Aggravated Assault against Tzanetopoulos. (*Id.*, ¶32)

7. The arrest of Plaintiff for the offense of Aggravated Assault was motivated by the insult given to Officer Centeno by Plaintiff, calling him "a fucking idiot." Insulting a police officer is not a crime, and there was no other reason why Officer Centeno arrested Plaintiff and executed the "clear and present danger" report. (*Id.*, ¶72)

8. When the Plaintiff's case was called in state court, the state prosecutor asked whether the Plaintiff had a valid FOID, and when that valid document was presented, the prosecutor dismissed the charges against the Plaintiff. (*Id.*, ¶34)

9. In conjunction with the arrest, Officer Centeno completed and submitted a police report which contained an inaccurate statement or statements, and/or description or descriptions of the events giving rise to the constitutional violations alleged. This police report also contained Officer Centeno's statement that it was his opinion that Plaintiff was a "clear and present" danger without any justification for this action. (*Id.*, ¶36)

10. In executing a "clear and present danger" report or request, a law enforcement office is required to *certify* that an individual poses a clear and present danger in that threatening physical or verbal behavior was demonstrated or that the individual was otherwise violent, suicidal or made assaultive threats, actions or exhibited "other behaviors." See: 430 ILCS 65/1.1(2)(13)(2) (*Id.*, ¶61)

11. In Illinois, "certification" occurs pursuant to 735 ILCS 5/1-109. It has the same force and effect as if the statement was subscribed and sworn to under oath before an authorized person, such as a Notary Public. (*Id.*, ¶62)

12. On July 28, 2022, approximately fourteen months after the incident, the Illinois State Police, through its office of Firearms Safety, issued a letter directed to Plaintiff concluding that Plaintiff had a mental condition and that he constituted a clear and present danger to himself and/or other persons of the communication, and that Plaintiff's FOID Card had been revoked. (*Id.*, ¶38)

## ARGUMENT

### I. THE UNILATERAL REINSTATEMENT OF PLAINTIFF'S FOID CARD DOES NOT RENDER THE STATE LAW CLAIMS MOOT AS THIS VIOLATION CAN REOCCUR AND HAS NOT BEEN COMPLETELY AND IRREVOCABLY ERADICATED

The State Defendants Motion to Dismiss the State law claims must be denied pursuant to Federal Rules of Civil Procedure 12(b)(1) because the reinstatement of Plaintiff's FOID card does not moot Plaintiff's state-law claims or violations of 42 USC §1983. Plaintiff's damages include removing Defendants declaration in any State documents or the Department of Human Services that he posed a "clear and present danger" to own a firearm, removal of his name to the NICS which will cause him to be unable to ever apply for a firearm again, compensatory damages, attorneys' fees and costs and injunctive relief. None of the aforementioned damages are satisfied by merely reinstating Mr. Zahareas's FOID card.

It is worth noting that Defendants do not contend that Plaintiff's Complaint fails to properly allege violations of 42 USC §1983, Constitutional violations, or violations of Illinois law for deprivation of rights and property without due process, but merely states that reinstating its FOID card moots its state law claims.

"The doctrine of mootness stems from Article III of the Constitution, which limits the jurisdiction of federal courts to live cases or controversies." *Damasco v. Clearwire Corp.,* 662 F.3d 891, 894 (7th Cir.2011). "A case becomes moot, and the federal courts lose subject matter jurisdiction, when a justiciable controversy ceases to exist between the parties." *Aslin v. Financial Indus. Regulatory Auth., Inc.,* 704 F.3d 475, 477 (7th Cir.2013). "A dismissal on mootness grounds is a dismissal for lack of jurisdiction." *Bernstein v. Bankert,* 733 F.3d 190, 224 (7th Cir.2013). Simply put, it is an established principle that "[f]ederal courts lack subject matter jurisdiction when a case becomes moot." *Pakovich v. Verizon LTD Plan,* 653 F.3d 488, 492 (7th Cir.2011).

For a defendant's voluntary cessation to render a case moot, (1) there must be no reasonable expectation that the alleged violation will recur, and (2) the effects of the **alleged violation must have been completely and irrevocably eradicated**. *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1978). In a voluntary cessation case, the defendant bears a heavy burden to persuade the court that a controversy is moot. *Ragsdale v. Turnock,* 841 F.2d 1358, 1365 (7th Cir. 1988). **(emphasis added)**

The Defendants view of this case is wrong. Plaintiff's cause of action is NOT based on the revocation of his FOID card, but the **unconstitutional manner** in which his card was revoked. Thus, not only are these violations not completely and irrevocably eradicated, these are issues that still remain at issue. The Defendants fails to assert in any affidavit or authenticated exhibit that they removed Mr. Zahareas's name from State documents, the Department of Human Services or NCIS which will deny any future application from him for a firearm now that he has been declared a "clear and present danger." Moreover, Defendants have not presented any evidence whatsoever that they will not revoke Plaintiff's FOID card in the future and, once again, wrongfully declare

that Mr. Zahareas posed a "clear and present danger". As such, Defendant's restoration of Mr. Zahareas's FOID card fails to provide any "reasonable expectation that the alleged violation will recur."

In this case, Defendants, acting under color of state law, maliciously prosecuted Mr. Zahareas, falsely arrested him, and deprived him of his property without due process of law. Defendants fail to submit any assurances that the deprived actions will not reoccur and have not even addressed Mr. Zahareas's damages with respect to his other claims.

Indeed, Defendants have the authority under Illinois State Law to revoke Mr. Zahareas's FOID card again if they arbitrarily believe his mental condition is of such a nature that it poses a clear and present danger:

> The Illinois State Police has authority to deny an application for or to revoke and seize a Firearm Owner's Identification Card previously issued under this Act only if the Illinois State Police finds that the applicant or the person to whom such card was issued is or was at the time of issuance:
>
> "**(f)** A person whose mental condition is of such a nature that it poses a clear and present danger to the applicant, any other person or persons, or the community;"
> 430 ILCS 65/8(f)

As stated above, Plaintiff did nothing to demonstrate to Officer Centeno that he unlawfully physically or verbally threatened any person or was a danger to himself; nor did Plaintiff engage in any physical or verbal behavior which would suggest that Plaintiff was violent, suicidal, or that he would illegally assault anyone. (Compl., ¶31). Nonetheless, as alleged in the Complaint, Officer Centeno made inconsistent statements in his Incident/Offense Report and arrested Mr. Zahareas, taking his freedom of liberty away from him and seizing his property. (*Id.* ¶¶30-32). In conjunction with the arrest, Officer Centeno completed and submitted a police report which contained an inaccurate statement or statements, and/or description or descriptions of the events giving rise to the constitutional violations alleged. This police report also contained Officer Centeno's

statement that it was his opinion that Plaintiff was a "clear and present" danger without any justification for this. (*Id.*, ¶36)

In executing a "clear and present danger" report or request, a law enforcement officer is required to *certify* that an individual poses a clear and present danger in that threatening physical or verbal behavior was demonstrated or that the individual was otherwise violent, suicidal or made assaultive threats, actions or exhibited "other behaviors." See: 430 ILCS 65/1.1(2)(13)(2) (*Id.*, ¶61). In Illinois, "certification" occurs pursuant to 735 ILCS 5/1-109. It has the same force and effect as if the statement was subscribed and sworn to under oath before an authorized person, such as a Notary Public. (*Id.*, ¶62). On July 28, 2022, approximately fourteen months after the incident, the Illinois State Police, through its office of Firearms Safety, issued a letter directed to Plaintiff concluding that Plaintiff had a mental condition and that he constituted a clear and present danger to himself and/or other persons of the communication, and that Plaintiff's FOID Card had been revoked. (*Id.*, ¶38)

When the Plaintiff's case was called, the state prosecutor asked whether the Plaintiff had a valid FOID card, and when that valid document was presented, the prosecutor dismissed the charges against the Plaintiff. (*Id.*, ¶34). In sum, even the state Prosecutor questioned the veracity of Officer Centeno's arrest thereby dismissing the charges against him. Nonetheless, Mr. Zahareas's FOID card remained revoked, without any recourse and he is enlisted in State documents as a person who poses a clear and present danger. Clearly, the reinstatement of Mr. Zahareas's FOID card does not make him whole and rectify the actions taken by the State Defendants, or most importantly, address the other constitutional violations alleged by this Plaintiff; See: Sec. II, p. 15 *sua sponte*. For these reasons alone, Defendant's motion to dismiss must be denied.

Defendant's citation to *H.P. v Naperville Cmty. Unit Sch. Dist. #203*, 910 F3d 957 (7th Cir

2018) is unavailing relative to this motion and distinguishable to the facts of this case. In *H.P. v Naperville Cmty. Unit Sch. Dist. #203 supra*, the issue of mootness was not the deciding factor in the Appeals Court decision to uphold the district court's grant of summary judgment to the District. The Appeals Court upheld the lower court's decision because plaintiff was denied enrollment to a school due to her non-residency, not due to a violation of the Americans with Disabilities Act.

Defendant's citation to *Berron v Ill. Concealed Carry Licensing Review Bd.*, 825 F3d 843, 846 (7th Cir 2016) is equally unavailing relative to this motion and distinguishable to the facts of this case. In *Berron v Ill. Concealed Carry Licensing Review Bd. Supra*, the defendants did not file a motion pursuant to Fed Rule 12(b)(1) on the ground of mootness. Instead, the *Berron* case was a case brought by the United States Court of Appeals consolidating four appeals filed by persons who asked for concealed-carry permits and were turned down. One of those appeals, the appeal brought by Seth Ghantous, was rendered moot because the Board was instructed to issue him a license to carry a firearm. See *United States v. Munsingwear, Inc.*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950).

As stated above, for a defendant's voluntary cessation to render a case moot, (1) there must be no reasonable expectation that the alleged violation will recur, and (2) the effects of the alleged **violation must have been *completely and irrevocably eradicated*.** *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1978). In a voluntary cessation case, the defendant bears a heavy burden to persuade the court that a controversy is moot. *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988). (emphasis added)

Mr. Zahareas submits to this Court that the State Defendants' actions in falsely arresting him, depriving him of his liberty and seizing his firearm is very much capable of repetition and evading review. Mr. Zahareas could be arrested, his FOID card can again be revoked, and once

again, he will be compelled to jump through unconstitutional legal hoops to appeal the decision to reinstate his Second Amendment rights and FOID card.

On information and belief, Mr. Zahareas's name remains in State records and "NICS" as a man who posed a clear and present danger in a situation where he was calm and collected and acted in self-defense of self and family. Defendants' conclusory statements, without any supportive documentation or attestation from a person with knowledge, fail to provide any security whatsoever that Mr. Zahareas will fall victim again to the State Defendants' actions. Mr. Zahareas's concern is much more than a "hypothetical" and much more of a certainty given the false arrest that the State prosecutor dismissed, the reinstatement of his FOID card that clearly never should have been taken in the first place and the apparent animosity Officer Centeno has over him. As such, the exceptions to mootness apply to this case and state that Defendants' motion must be denied.

## II. PLAINTIFF CONTINUES TO SEEK JUSTICE FOR HIS STATE LAW CLAIMS

Plaintiff seeks justice for violations of his Second, Fourth, Fifth, and Fourteenth Amendment constitutional rights as a result of Officer Centeno, acting under color of state law, arresting him without probable cause and depriving him of his rights, privileges or immunities securing by the Constitution of the United States. Plaintiff's Constitutional rights were again violated when the State Defendants, acting under color of state law, revoked his FOID card and seized his firearms without probable cause and due process.

As such, Plaintiff State law claims are so intertwined with his federal claims that they form part of the same case or controversy under Article III of the federal constitution which is not mooted by reinstating his FOID card. As stated above, the Courts recognize that some cases, like the case at hand, held that disputes over an ongoing policy may continue, even after the specific

offense precipitating the suit has become moot. *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of Milwaukee*, 708 F.3d 921, 930 (7th Cir. 2013) *citing to Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 121–24, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974).

Plaintiff properly alleged violations of 42 USC §1983. Plaintiff's First Cause of action properly alleges a violation of 42 USC §1983 due to the malicious abuse of process asserted by Officer Jose G. Centeno. (*Id.*¶¶56-67). Plaintiff's Second Cause of action properly alleges a violation of 42 USC §1983 due to the false arrest asserted by Officer Centeno. (*Id.* ¶¶68-75). Plaintiff seeks compensatory damages, attorneys' fees and costs and such other and further relief as the Court deems just and equitable for the First and Second Counts of the Complaint. Importantly, reinstating a FOID card does not rectify these damages.

Plaintiff also properly alleged violations of Illinois State Law. Plaintiff's Third and Fourth Cause of actions properly allege a deprivation of civil rights and personal property without due process of law due to instituting, and executing on, Illinois Law 430 ILCS 65/8(f) which gave Officer Centeno and Defendant Leahy the authority to confiscate his firearm without due process and in violation of Plaintiff's Constitutional right to bear arms under the Fourth and Fourteenth Amendments. (*Id.* ¶¶76-92). Plaintiff's Third and Fourth cause of action further allege that in order to appeal the State law defendants confiscation of his firearm, he must jump through so many hoops that it is impossible to manage filing an appeal in accordance with Illinois statutes, 430 ILCS Section 65/1(2)(13).

To establish standing, "a plaintiff must show (1) injury in fact, meaning an invasion of a legally protected interest that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the defendant's actions; and (3) that a favorable decision

is likely to redress the injury." *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 527-28 (7th Cir. 2001). "With respect to the injury in fact requirement, the plaintiff must establish that he has sustained or is immediately in danger of sustaining some direct injury." *Tobin for Governor*, 268 F.3d at 527-28. *See Lyons*, 461 U.S. at 101-02, ("Abstract injury is not enough."); *Lyons*, 461 U.S. at 101.

"[S]o long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case. Even then, it is not clear how often courts will find a case mooted: 'It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 608-09, (2001) (quoting *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000).

As set forth above, 430 ILCS Section 65/1(2)(13) of Illinois Law requires a person to jump through impossible hoops in order to appeal a revocation of a FOID card. This provision of the law is unconstitutional and caused Mr. Zahareas harm that was not rectified simply by reinstating his FOID card.

Plaintiff asserted claims for compensatory damages, attorneys' fees and costs as well as declaratory relief. As such, reinstating Mr. Zahareas's FOID card does not moot his other claims of injury.

## CONCLUSION

Respectfully, this Court should dismiss State Defendant's Amended Motion to Dismiss in its entirety as granting such relief will further violate this Plaintiff's constitutional rights. For all

the foregoing reasons, Plaintiff requests that this Court deny State Defendants' motion to dismiss in its entirety, including but not limited to the entry of a partial summary judgment relative to the FOID card issue.

February **27**, 2024                                            Respectfully submitted,

                                                            STEVEN ZAHAREAS
By:    Charles Wm. Dobra, Ltd.
By:    **/s/ Charles Wm. Dobra**

                                                            *Attorney for Plaintiff*
                                                            *Steven Zahareas*

**Charles Wm. Dobra, Esq.**
CHARLES WM. DOBRA, LTD.
Attorney at Law
675 East Irving Park Road, Suite 103
Roselle, Illinois 60172
Tel. (630) 893-2494
Fax. (630) 893-2497
Email: cwdobra@dobralaw.comcastbiz.net
ARDC: #0647039/Kane County
Du Page County: 29320
Cook County: 26755
Winnebago: 8219
**Facsimile Service in Compliance with**
**Federal Rules will be accepted at:**
**(630) 893-2497**

## PROOF OF SERVICE

The undersigned, an attorney, hereby certifies that this document was served by causing a copy to be transmitted by Electronic Mail, to all attorneys of record at their respective electronic mail address as disclosed by the pleadings, and transmitting the same from Roselle, Illinois, before 5:00 p.m., on February **27**, 2024.

                                                                          **/s/ Charles Wm. Dobra**